1  EDMUND G. BROWN JR.
   Attorney General of the State of California
2  DANE R. GILLETTE
   Chief Assistant Attorney General
3  JULIE L. GARLAND
   Senior Assistant Attorney General
4  ANYA M. BINSACCA
   Supervising Deputy Attorney General
5  SCOTT C. MATHER, State Bar No. 190912
   Deputy Attorney General
6   455 Golden Gate Avenue, Suite 11000
    San Francisco, CA  94102-7004
7   Telephone:  (415) 703-5709
    Fax:  (415) 703-5843
8   Email:  Scott.Mather@doj.ca.gov

9  Attorneys for Respondent Ben Curry

10

11              IN THE UNITED STATES DISTRICT COURT

12           FOR THE NORTHERN DISTRICT OF CALIFORNIA

13                   SAN FRANCISCO DIVISION

14

| | |
|---|---|
| **WAYNE STEDSON ROSS,** | C07-2560 WHA |
| Petitioner, | |
| v. | Judge:  The Honorable William Alsup |
| **BEN CURRY, Warden,** | |
| Respondent. | |


20

21        **ANSWER TO PETITION FOR WRIT OF HABEAS CORPUS;**
              **MEMORANDUM OF POINTS AND AUTHORITIES**

22

23

24

25

26

27

28

**TABLE OF CONTENTS**

Page

MEMORANDUM OF POINTS AND AUTHORITIES                                    8

    INTRODUCTION                                                    8

    STANDARD OF REVIEW                                              9

    ARGUMENT                                                       10

        THIS COURT SHOULD DENY THE PETITION BECAUSE THE STATE COURT DECISION WAS NOT CONTRARY TO, OR AN UNREASONABLE APPLICATION OF, CLEARLY ESTABLISHED SUPREME COURT LAW, NOR WAS IT BASED ON AN UNREASONABLE INTERPRETATION OF THE FACTS.                10

        A.  The State Court Decision Did Not Contradict the Clearly Established Federal Law Addressing the Federal Protections Due to Inmates in the Parole Process.                                10

        B.  Even if the Some-Evidence Standard Applies, the State Court Decisions Are Still Not Contrary to or an Unreasonable Application of Federal Law, as Clearly Established by the United States Supreme Court, nor Based on an Unreasonable Interpretation of the Facts.                                                    13

        C.  Petitioner Fails to Demonstrate that the Board's Decision Was Otherwise Unlawful.                                        17

            1.  Petitioner Cannot Show that the Board Unlawfully Relied on the Circumstances of His Crime to Deny Him Parole at His Second Parole Consideration Hearing.                    17

            2.  Petitioner's Erroneously Argues that He Is Entitled to Parole Based on the Language of California Penal Code section 3041(a) and the Board's Sentencing Matrices.    19

            3.  Petitioner's Claim that *Dannenberg* Violated the Ex Post Facto Clause by Imposing a New Legal Standard Allowing the Board to Consider Evidence Exceeding the Inmate's Conviction Is Without Merit.                                            21

CONCLUSION                                                            21

1

# TABLE OF AUTHORITIES

2                                                                            **Page**

3  **Cases**

4  *Bell v. Cone*
   535 U.S. 685 (2002)                                                       9
5
   *Benny v. U.S. Parole Comm'n*
6  295 F.3d 977 (9th Cir. 2002)                                              8

7  *Biggs v. Terhune*
   334 F.3d 910 (9th Cir. 2003)                                           17-19
8
   *Carey v. Musladin*
9  __ U.S. __ 127 S. Ct. 649 (2006)                                      7, 12

10 *Cass v. Woodford*
   432 F. Supp. 2d 1061 (S.D. Cal. 2006)                                     19
11
   *Cato v. Rushen*
12 824 F.2d 703 (9th Cir. 1987)                                              13

13 *Foote v. Del Papa*
   __ F.3d __, 2007 WL 1892862 (9th Cir., July 3, 2007)                      12
14
   *Gill v. Ayers*
15 342 F.3d 911 (9th Cir. 2003)                                              9

16 *Greenholtz v. Inmates of Nebraska Penal & Correctional Complex*
   442 U.S. 1 (1979)                                                  6, *passim*
17
   *Gutierrez v. Griggs*
18 695 F.2d 1195 (9th Cir. 1983)                                             20

19 *Hernandez v. Small*
   282 F.3d 1132 (9th Cir. 2002)                                             15
20
   *Hill v. Kane*
21 2006 WL 3020923 (Oct. 23, 2006) (N.D. Cal.)                               18

22 *In re Dannenberg*
   34 Cal. 4th 1061 (2005)                                            6, *passim*
23
   *In re Honesto*
24 130 Cal. App. 4th 81 (2005)                                               19

25 *In re Rosenkrantz*
   29 Cal.4th 616 (2002)                                               8, 13, 21
26
   *In re Van Houten*
27 116 Cal. App. 4th 339 (2004)                                              16

28

**TABLE OF AUTHORITIES  (continued)**

**Page**

*Irons v. Carey*
479 F.3d 658 (9th Cir. 2007) ....................................................... 13, 18-20

*Jancsek v. Oregon Board of Parole*
833 F.2d 1389 (9th Cir. 1987) ..................................................... 11

*Lockyer v. Andrade*
538 U.S. 63 (2003) ..................................................................... 9, 10

*Maynard v. Cartwright*
486 U.S. 356 (1988) ................................................................... 11

*McQuillion v. Duncan*
306 F.3d 895 (2002) ................................................................... 11, 12

*Middleton v. Cupp*
768 F.2d 1083 (9th Cir. 1985) ..................................................... 20

*Milton v. Wainwright*
407 U.S. 371 (1972) ................................................................... 9

*Nguyen v. Garcia*
477 F.3d 716 (9th Cir. 2007) ....................................................... 13

*Pedro v. Or. Parole Bd.*
825 F.2d 1396 (9th Cir. 1987) ..................................................... 10, 21

*Powell v. Gomez*
33 F.3d 39 (9th Cir. 1994) ........................................................... 13

*Pulley v. Harris*
465 U.S. 37 (1984) ..................................................................... 20

*Rose v. Hodges*
423 U.S. 19 (1975) ..................................................................... 20

*Sandin v. Conner*
515 U.S. 472 (1995) ................................................................... 6

*Sass v. Cal. Bd. of Prison Terms*
461 F.3d 1123 (9th Cir. 2006) ..................................................... 6, 11-13, 18, 19

*Schriro v. Landrigan*
__ U.S. __, 127 S. Ct. 1933 (2007) ............................................. 12

*Shelby v. Bartlett*
391 F.3d 1061 (9th Cir. 2004) ..................................................... 9

*Stanley v. Cal. Supreme Court*
21 F.3d 359 (9th Cir. 1994) ......................................................... 1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**TABLE OF AUTHORITIES  (continued)**

**Page**

*Superintendent v. Hill*
472 U.S. 445 (1985)                                     11-13, 16

*Wainwright v. Greenfield*
474 U.S. 284 (1986)                                            13

*Wilkinson v. Austin*
545 U.S. 2384 (2005)                                          11

*Wilson v. Czerniak*
355 F.3d 1151 (9th Cir. 2004)                              9, 17

*Woodford v. Viscotti*
537 U.S. 19 (2002)                                             9

*Ylst v. Nunnemaker*
501 U.S. 797 (1991)                                           10


**Statutes**

California Penal Code
    § 190.2                                          16
    § 190.2(a)(17)(G)                                16
    § 3041                                     7, 17, 20
    § 3041(a)                                     19, 20

United States Code, Title 28
    § 2254                                         1, 9
    § 2254(a)                                         7
    § 2254(d)                             9, 10, 13, 17


**Other Authorities**

Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA)          6, *passim*

California Code of Regulations, Title 15
    § 2402(a)                                        20
    § 2402(b)                                     15-17
    § 2402(b)-(d)                                     7
    § 2402(d)(8)-(9)                                 14

Rules Governing
    § 2254 Cases, Rule 2(a)                            1

1  EDMUND G. BROWN JR.
   Attorney General of the State of California
2  DANE R. GILLETTE
   Chief Assistant Attorney General
3  JULIE L. GARLAND
   Senior Assistant Attorney General
4  ANYA M. BINSACCA
   Supervising Deputy Attorney General
5  SCOTT C. MATHER, State Bar No. 190912
   Deputy Attorney General
6     455 Golden Gate Avenue, Suite 11000
      San Francisco, CA  94102-7004
7   Telephone:  (415) 703-5709
    Fax:  (415) 703-5843
8   Email:  Scott.Mather@doj.ca.gov

9  Attorneys for Respondent Ben Curry

10

11              IN THE UNITED STATES DISTRICT COURT

12          FOR THE NORTHERN DISTRICT OF CALIFORNIA

13                  SAN FRANCISCO DIVISION

14

15  WAYNE STEDSON ROSS,                   C07-2560 WHA

16                          Petitioner,   ANSWER TO PETITION FOR
                                          WRIT OF HABEAS CORPUS;
17          v.                            MEMORANDUM OF POINTS
                                          AND AUTHORITIES
18  BEN CURRY, Warden,

19                          Respondent.   Judge:    The Honorable
                                                    William Alsup
20

21          As an Answer to the Petition for Writ of Habeas Corpus filed by inmate Wayne Stedson

22  Ross, Respondent Ben Curry,[1] alleges as follows:

23          1.      Petitioner is lawfully within the custody of the California Department of Corrections

24  and Rehabilitation pursuant to a judgment of the Ventura County Superior Court, which in June

25

26          1. The proper respondent in this action is Warden Curry. *Stanley v. Cal. Supreme Court*, 21
    F.3d 359, 360 (9th Cir. 1994) (holding that the warden where petitioner is incarcerated is the proper
27  respondent); Rule 2(a), 28 U.S.C. § 2254.  But because the actions complained of in this petition
    concern a parole consideration hearing, the Board of Parole Hearings is used interchangeably with
28  Respondent in this Answer and Supporting Memorandum of Points and Authorities.

Answer to Pet. for Writ of Habeas Corpus; Mem. of P. & A.                           *Ross v. Curry*
                                                                                    C07-2560 WHA

1    1987 sentenced him to an indeterminate term of twenty-five years to life following his

2    convictions of first-degree murder and first-degree burglary. (Pet. at 2; Ex. 1, Jun. 9, 2006

3    Subsequent Parole Consideration Hearing Transcript, at 1.) Petitioner does not challenge the

4    validity of the convictions or sentence in his petition. Rather, he alleges that the Board of Parole

5    Hearings (Board) unlawfully denied him parole at his June 2006 parole consideration hearing.

6    (*See generally* Pet.)

7    2.    Petitioner's June 2006 hearing was only his second parole consideration hearing

8    following a three-year parole denial at his initial hearing in November 2002. Petitioner's

9    minimum eligible parole date was December 2003. (Ex. 2, Chronological History.)

10    3.    Petitioner does not contest that he received notice of his 2006 parole hearing, appeared

11    at the hearing, and received a copy of the Board's decision finding him unsuitable for parole.

12    (*See generally* Pet.)

13    4.    During the hearing, the Board considered the following summary of Petitioner's

14    commitment offense:

15    On December 31, 1986, Ray Tejada arrived at the home of victim Ernest Sanchez, a 73-year

16    old man. Mr. Tejada found the victim in an office area of the home, lying on his side injured.

17    When police arrived, they found the victim "lying in a pool of blood" and, after checking his

18    vital signs, determined he was dead.

19    In investigating the scene, officers discovered finger prints belonging to Petitioner from the

20    inside sill of a broken bathroom window and a pair of scissors "imbedded in the baseboard" of

21    the office area. In addition, the office area had "splatters [of] blood and the furniture was in

22    disarray as though there had been a struggle." The officers also observed shoe prints on the

23    bloodstains found on the kitchen floor and that the telephone receiver was "off the hook dangling

24    onto the floor."

25    Because Petitioner was the primary suspect in a December 16, 1986 theft of the victim's

26    wallet, police investigators initially contacted him for questioning even before his fingerprints

27    were discovered. Petitioner initially denied involvement in the murder, stating that he had been

28    with his brother and a friend. Petitioner claimed that the murder victim and he were good

1  friends, that "because the victim was still sexually active, he would provide him females" on

2  occasion, and that he and the victim would also box with each other. The police investigators

3  interviewed Petitioner's brother and friend, both of whom confirmed Petitioner had been with

4  them that night.

5      After Petitioner's fingerprints were discovered at the murder scene, the police investigators

6  again interviewed Petitioner, at which time he submitted to a polygraph test. Petitioner then

7  confessed to "inflicting blows on the victim with a pair of scissors in self defense." Petitioner

8  claimed that he had not intended to kill the victim, who was alive when Petitioner left. In a

9  subsequent police interview, Petitioner indicated the victim had "initiated the attack by striking

10  him several times in the face," including striking Petitioner with a stapler and stabbing at him

11  with a pair of scissors. Petitioner claimed he was able to take the scissors away from the victim,

12  at which point he "started hitting the victim back with the scissors, making contact with him

13  three or four times." Petitioner said he had initially lied about his involvement in the victim's

14  death because he was afraid. Petitioner also stated that he had dumped the bloody clothing near a

15  K-Mart, but then later changed his story and said he had dumped the clothing in a different

16  location. Petitioner indicated that after this incident, he had gone with his brother and friend to

17  purchase some cocaine, but had not used any immediately preceding the murder.

18      An autopsy of the victim revealed eight wounds to the chest area (none of which punctured

19  the "lungs/chest cavity") and 26 to 28 puncture wounds to the face, neck, and head area. Further,

20  "[m]any of the head wounds penetrated the scalp and appeared to have gouged the victim's skull.

21  A majority of the wound were concentrated on the victim's right cheek and temple area."

22  However, "[n]o visible defensive wounds were found on the victim's hands." The cause of death

23  was determined to be "myocardioischemia due to blood loss from the multiple stab wounds."

24  (Ex. 1 at 5-12; Ex. 3, Nov. 2005 Life Prisoner Evaluation Report, at 1; Ex. 4, Nov. 2002 Life

25  Prisoner Evaluation Report, at 1-3; Ex. 5, Probation Officer's Report, at 4-14.)

26      5.    When questioned about the murder, Petitioner stated that after he had taken the scissors

27  from the victim during the altercation, he "just started, you know, punching at him and stuff."

28  Petitioner stated he had not realized the victim was dead until contacted by the police. Petitioner

Answer to Pet. for Writ of Habeas Corpus; Mem. of P. & A.                    *Ross v. Curry*
                                                                              C07-2560 WHA

1   admitted he had drunk approximately three to four beers before going over to the victim's home

2   and that at the time of the murder he was 28 years old, had been laid off his job for a couple

3   months, and that his income was based on unemployment and doing odd jobs for the victim.

4   Petitioner also admitted he owed the victim $50 at the time of the murder and that some of his

5   prior debts to the victim had been forgiven after he had provided the victim with women. (Ex. 1

6   at 12-21; *see also* Ex. 4 at 3 [Petitioner's version of the offense].)

7        6.    At the conclusion of the hearing, the Board denied Petitioner parole, finding that he

8   was not yet suitable for parole and "would pose an unreasonable risk of danger to society or a

9   threat to public safety if released from prison." The Board based this decision in part on the

10  circumstances of Petitioner's murder offense. The Board found that Petitioner's murder of the

11  73-year old victim had been committed in a manner that was "especially cruel and callous and

12  clearly demonstrates an exceptionally callous disregard for human suffering" in that after a fight

13  during which Petitioner stabbed the victim "approximately 24, 25 times," he left him bleeding on

14  the floor "essentially to die." The Board observed that the pictures of the crime scene were

15  "pretty telling," revealing "that there was blood left in a lot of places, probably from the attack

16  itself. It looked pretty hideous." In addition, the Board found that Petitioner's motive for

17  committing this murder—a dispute with the victim—also weighed against parole.

18      The Board also considered Petitioner's conduct following this incident. Petitioner had

19  attempted to "disguise" the blood on his clothing and had initially lied to police about his

20  involvement in the murder. And while the Board found that Petitioner had reflected "pretty good

21  insight" about the offense in his discussion of it during the hearing, his comments also indicated

22  that he still had "a tendency to minimize a little bit." The Board noted that in his closing

23  statements, Petitioner had not referenced the murder at all, focusing instead solely on what he

24  wanted to do with his life if paroled. (Ex. 1 at 58-60; *see also* Ex. 1 at 56-57 [Pet'r's closing

25  statement].)

26       7.    In addition to the commitment offense, the Board found Petitioner unsuitable for parole

27  because he had not yet completed his GED. (Ex. 1 at 65-68; *see also* Ex. 1 at 23-26, 40-41; Ex. 4

28  at 4.) Further, the Board advised Petitioner that he needed to develop alternative parole plans in

1  case his plan to live with his wife at her parents' home did not work out, especially considering

2  that he had not yet lived with his wife. (*Id.* at 71-72; *see also* Ex. 1 at 29-32, 34, 36-38; Ex. 3 at

3  6-7.)[2]

4      8.    In finding Petitioner unsuitable for parole, the Board considered that Petitioner

5  received three disciplinary violations while in prison, which it considered a "very good"

6  disciplinary history considering that the last one had been in 1993. The Board was concerned,

7  however, that Petitioner had exhibited a pattern of minimizing his conduct, not just as to the

8  murder offense, but also in his comments during the parole hearing about his prior disciplinary

9  history. (Ex. 1 at 64-65, 69; *see also* Ex. 1 at 21-23, 46 [discussing the disciplinary

10  misconduct].)

11      9.    Rather than issuing Petitioner the minimum one-year denial, the Board deferred further

12  parole consideration for two years. (Ex. 1 at 60.)

13      10.   Before seeking relief in federal court, Petitioner challenged the June 2006 parole denial

14  in the state courts generally alleging the same claims he alleges in his federal habeas petition.

15  The Ventura County Superior Court denied Petitioner's habeas corpus petition in November

16  2006, finding that the Board had properly denied Petitioner parole "because of the commitment

17  offense, the strength or lack thereof of a parole plan and his lack of a GED." The court further

18  found that Petitioner's claims had "no merit whatsoever." (Ex. 6, Cal. Super. Ct. Pet.; Ex. 7, Cal.

19  Super. Ct. Order.)

20      11.   Petitioner then filed a habeas corpus petition in the California Court of Appeal, which

21  was summarily denied in February 2007. (Ex. 8, Cal. Ct. of Appeal Order.) Petitioner then filed

22  a petition for review in the California Supreme Court, which was summarily denied in April

23  2007. (Ex. 9, Cal. Sup. Ct. Pet.; Ex. 10, Cal. Sup. Ct. Order.) Based on the petitions filed and

24  the orders issued in his state court proceedings, Petitioner appears to have exhausted his

25  cognizable claims in the instant petition. Respondent does not admit Petitioner has exhausted his

26  ────────────────────────────────────

27      2. As discussed during the hearing, although Petitioner had met his wife before the murder,
   they were not married until approximately 15 years before his June 2006 hearing, i.e., after he began

28  his prison term. (Ex. 1 at 29-30.)

1   claims to the extent they are more broadly interpreted to encompass any systematic issues beyond

2   the June 2006 parole consideration hearing.

3         12.   Respondent denies that Petitioner has shown that the state courts' denial of

4   habeas corpus was contrary to, or involved an unreasonable application of, clearly established

5   Supreme Court law, or that the denial was based on an unreasonable determination of facts in

6   light of the evidence presented.  Petitioner therefore fails to make a case for relief under the

7   Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA).

8         13.   Respondent denies that Petitioner has a federally protected liberty interest in parole.

9   The Supreme Court has set forth two methodologies for determining whether a state creates a

10  federally protected liberty interest and it is not clear which applies in the parole context.  Under

11  *Greenholtz v. Inmates of Nebraska Penal & Correctional Complex*, 442 U.S. 1 (1979), California

12  inmates do not have a federal liberty interest in parole because California's parole statute

13  involves a two-step process that does not impose a mandatory duty to grant parole release unless

14  and until the Board finds an inmate suitable for parole.  *See id.* at 12 (finding that a convicted

15  person does not have a federally protected liberty interest in parole release unless the state creates

16  the interest through the "unique structure and language" of its parole statutes, thereby giving

17  inmates an expectancy in parole release); *see also In re Dannenberg*, 34 Cal. 4th 1061, 1087-88

18  (2005) (clarifying that under California Penal Code section 3041, the setting of a parole release

19  date is neither mandatory nor presumed); *contra Sass v. Cal. Bd. of Prison Terms*, 461 F.3d

20  1123, 1128 (9th Cir. 2006).

21        14.   Under the alternative methodology of *Sandin v. Conner*, 515 U.S. 472 (1995),

22  an inmate's constitutional liberty interest is "generally limited to freedom from restraint which

23  . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents

24  of prison life."  *Id.* at 484.  A decision to continue incarcerating an inmate who is serving a

25  potential life term simply cannot amount to an "atypical and significant hardship . . . in relation

26  to the ordinary incidents of prison life."  *Id.*  Therefore, California inmates do not have a liberty

27  interest in parole under either methodology.  Accordingly, because Petitioner is not in custody in

28  violation of federal law, he has not alleged a federal question and this Court does not have

1   subject matter jurisdiction to decide his petition.  28 U.S.C. § 2254(a).

2       15.   Even if Petitioner has a federally protected liberty interest in parole, Respondent

3   alleges that Petitioner had an opportunity to present his case before the Board at his June 2006

4   parole hearing, and that the Board provided him with a detailed explanation as to why he was

5   denied parole.  Hence, Petitioner received all the process due under *Greenholtz*.

6       16.   There is no United States Supreme Court decision requiring a state parole decision

7   to be supported by some evidence.  *See Carey v. Musladin*, __ U.S. __ 127 S. Ct. 649, 654

8   (2006) (holding that the absence of Supreme Court law on a particular issue precludes habeas

9   relief under AEDPA).  Thus, Petitioner has not shown that the state court's denial of habeas

10  corpus was contrary to, or involved an unreasonable application of, clearly established Supreme

11  Court law, or that the denial was based on an unreasonable determination of facts in light of the

12  evidence presented.  Hence, Petitioner fails to make a prima facie case for relief under AEDPA.

13      17.   Respondent affirmatively alleges that the Board considered all reliable and relevant

14  evidence before it at Petitioner's June 2006 parole hearing, and that its decision is supported by

15  some evidence.

16      18.   Respondent denies that the Board is restricted to considering only the criteria specified

17  in its regulations.  The Board's regulations provide that these criteria are set forth merely as

18  "general guidelines" and that the Board is required to consider "[a]ll relevant, reliable

19  information available to the panel."  Cal. Code Regs. tit. 15, § 2402(b)-(d).

20      19.   Respondent denies that the Board was required to parole Petitioner in June 2006 based

21  on the evidence and factors in favor of parole, its regulatory sentencing matrices, or pursuant to

22  Penal Code section 3041.

23      20.   Respondent denies that at his June 2006 parole hearing the Board unlawfully continued

24  to rely on the circumstances of Petitioner's murder offense to deny him parole.

25      21.   Respondent denies that the June 2006 parole denial has resulted in Petitioner being

26  punished for a greater offense than that of which he was convicted.

27      22.   Respondent denies that the Board's June 2006 parole denial constitutes an ex post facto

28  violation.

1    23. Respondent denies that the Board's decision denying parole violated Petitioner's

2  federal due process rights.

3    24. Respondent affirmatively alleges that Petitioner fails to state or establish any grounds

4  for federal habeas corpus relief.

5    25. If the petition is granted, Petitioner's remedy is limited to a new parole consideration

6  hearing before the Board that comports with due process. *Benny v. U.S. Parole Comm'n*, 295

7  F.3d 977, 984-85 (9th Cir. 2002) (finding that the Board must exercise the discretion in

8  determining whether or not an inmate is suitable for parole); *In re Rosenkrantz,* 29 Cal.4th 616,

9  658 (2002) (finding that the proper remedy if a Board decision lacks some evidence is a new

10  hearing that comports with due process).

11    26. Respondent does not allege that there is any procedural bar to this action, including

12  statute of limitations or non-retroactivity.

13    27. Respondent denies that an evidentiary hearing is necessary in this matter.

14    28. Except as expressly admitted above, Respondent denies, generally and

15  specifically, each and every allegation of the petition, and specifically denies that Petitioner's

16  administrative, statutory, or constitutional rights have been violated in any way.

17    For the reasons stated in this Answer and in the following Memorandum of Points and

18  Authorities, this Court should deny the Petition.

19    **MEMORANDUM OF POINTS AND AUTHORITIES**

20    **INTRODUCTION**

21    Petitioner challenges the Board's June 2006 decision finding him unsuitable for parole on

22  several grounds, including that the decision was not supported by sufficient evidence. (Order to

23  Show Cause, filed Jun. 11, 2007, at 2; Pet.) This Court should deny his Petition, however,

24  because the state court decisions denying him relief were neither contrary to, nor an unreasonable

25  application of, federal law as established by the Supreme Court, nor were they based on an

26  unreasonable determination of the facts. Petitioner was provided an opportunity to be heard and

27  a written copy of the Board's decision, which is all the process he is entitled to receive. And

28  even if this Court applies the some-evidence standard, Petitioner's claims still fail because the

Answer to Pet. for Writ of Habeas Corpus; Mem. of P. & A.                    *Ross v. Curry*
                                                                              C07-2560 WHA

8

1    state court properly applied this standard in upholding the Board's decision and determining that

2    Petitioner's remaining claims were without merit.

### STANDARD OF REVIEW

4        The purpose of federal habeas corpus review is to supervise the quality of state courts'

5    adjudications of federal constitutional claims. *Milton v. Wainwright*, 407 U.S. 371, 377 (1972).

6    AEDPA governs this Court's review of Petitioner's habeas corpus petition because he is in

7    custody pursuant to a state court judgment. 28 U.S.C. § 2254; *Shelby v. Bartlett*, 391 F.3d 1061,

8    1063 (9th Cir. 2004); *Gill v. Ayers*, 342 F.3d 911, 917 (9th Cir. 2003) (the provisions of AEDPA

9    apply to cases filed after its effective date of April 24, 1996).

10       Under § 2254, when a habeas petitioner's claim has been adjudicated on the merits in state-

11   court proceedings, a federal court may not grant relief unless the adjudication of the claim: (1)

12   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly

13   established Supreme Court law; or (2) resulted in a decision that was based on an unreasonable

14   determination of the facts in light of the evidence presented in the state court proceeding.

15   28 U.S.C. § 2254(d); *Wilson v. Czerniak*, 355 F.3d 1151, 1154 (9th Cir. 2004). "[C]learly

16   established Federal law under § 2254(d)(1) is the governing legal principle or principles set forth

17   by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538

18   U.S. 63, 72-73 (2003).

19       The "highly deferential standard for evaluating state court rulings" embodied in § 2254(d)

20   "demands that state court decisions be given the benefit of the doubt." *Woodford v. Viscotti*, 537

21   U.S. 19, 24 (2002). Thus, the state court decision may not be set aside based merely on a

22   showing of error or of an incorrect application of the governing federal law. *Andrade*, 538 U.S.

23   at 75; *Bell v. Cone*, 535 U.S. 685, 694, 699 (2002) ("[I]t is not enough to convince a federal

24   habeas court that, in its independent judgment, the state-court decision applied [the Supreme

25   Court] precedent incorrectly").

26       Here, the state courts adjudicated Petitioner's claims on the merits. The superior court

27   issued a reasoned decision, concluding that the Board's decision was supported by some

28   evidence. (Ex. 7.) The California Court of Appeal and California Supreme Court summarily

1   denied Petitioner's subsequent related petitions. (Exs. 8, 10.)

2       The United States Supreme Court has stated that when the state's highest court issues an

3   unexplained order denying the petition, a federal court is to "look-through" that decision to the

4   last explained state court decision to determine whether the supreme court's denial was a

5   decision on the merits. *Ylst v. Nunnemaker*, 501 U.S. 797, 803, 805-06 (1991). A federal court

6   is to apply the following presumption: "Where there has been one reasoned state judgment

7   rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same

8   claim rest upon the same ground." *Id.* at 803. Thus, "looking through" the California Supreme

9   Court's decision to the last reasoned decision issued by the superior court, the California

10   Supreme Court likewise denied Petitioner's claims on the merits. *Id.*

11       Because Petitioner cannot show that the state court's adjudication merits reversal under the

12   AEDPA deferential standard of review, his federal habeas corpus petition should be denied. 28

13   U.S.C. § 2254(d); *Andrade*, 538 U.S. at 71.

14   **ARGUMENT**

15   **THIS COURT SHOULD DENY THE PETITION BECAUSE THE STATE**
    **COURT DECISION WAS NOT CONTRARY TO, OR AN UNREASONABLE**
16   **APPLICATION OF, CLEARLY ESTABLISHED SUPREME COURT LAW,**
    **NOR WAS IT BASED ON AN UNREASONABLE INTERPRETATION OF**
17   **THE FACTS.**

18   **A.   The State Court Decision Did Not Contradict the Clearly Established Federal Law**
    **Addressing the Federal Protections Due to Inmates in the Parole Process.**
19

20       The setting of a parole date is not part of the criminal prosecution so the full panoply of

21   rights afforded a defendant in a criminal proceeding are not constitutionally mandated in a parole

22   proceeding. *Pedro v. Or. Parole Bd.*, 825 F.2d 1396, 1398-99 (9th Cir. 1987). The Supreme

23   Court has found that a parole board's procedures are constitutionally adequate if the inmate is

24   given an opportunity to be heard and a decision informing him of the reasons he did not qualify

25   for parole. *Greenholtz*, 442 U.S. at 16. Thus, as a matter of "clearly established" Supreme Court

26   law, a challenge to a parole decision will fail if the inmate has received the protections required

27

28

Answer to Pet. for Writ of Habeas Corpus; Mem. of P. & A.          *Ross v. Curry*
                                    C07-2560 WHA

1   under *Greenholtz. Maynard v. Cartwright*, 486 U.S. 356, 361-62 (1988).[3/]

2   The Ninth Circuit has held that some evidence must support a parole decision. *Sass*, 461

3   F.3d at 1128-29; *McQuillion v. Duncan,* 306 F.3d 895, 904 (2002). The Ninth Circuit first

4   applied the some-evidence standard to parole in *Jancsek v. Oregon Board of Parole,* 833 F.2d

5   1389 (9th Cir. 1987). The court reasoned that because parole hearings affect the duration of

6   imprisonment, like the loss of good time credits due to disciplinary violations, the some-evidence

7   standard that was applied to prison disciplinary hearings in *Superintendent v. Hill*, 472 U.S. 445

8   (1985), also applied to parole hearings. *Jancsek*, 833 F.2d at 1390. But the Ninth Circuit did not

9   consider that because prison disciplinary hearings involve a finding of guilt, the process due in

10  disciplinary hearings is greater than required for parole hearings. Specifically, in *Hill*, the

11  Supreme Court held that an inmate must be provided with: 1) advance written notice of the

12  disciplinary charges; 2) an opportunity to present evidence and call witnesses so long as safety

13  allows, and 3) a written statement by the factfinder of the evidence relied on and the reasons for

14  the disciplinary action. *Hill*, 472 U.S. at 454.

15  The requirements in *Hill* are not mandated in parole consideration hearings. *Greenholtz*,

16  442 U.S. at 16. Thus, there is no requirement that inmates be allowed witnesses at their hearings

17  and the parole authority need not specify the particular evidence relied upon in reaching its

18  decision. *Id.* at 15. "To require the parole authority to provide a summary of the evidence would

19  tend to convert the process into an adversary proceeding and to equate the Board's parole-release

20  determination with a guilt determination." *Id.* at 15-16. By requiring that some evidence support

21  parole decisions, the Ninth Circuit has acted contrary to Supreme Court precedent by equating

22  parole decisions with guilt determinations. Moreover, these circuit court decisions do not rest on

23  Supreme Court authority applying the some-evidence standard in the parole consideration

24

25  3. The Supreme Court has cited *Greenholtz* approvingly for the proposition that the "level

26  of process due for inmates being considered for release on parole includes an opportunity to be heard and notice of any adverse decision" and noted that *Greenholtz* remained "instructive for [its]

27  discussion of the appropriate level of procedural safeguards." *Wilkinson v. Austin*, 545 U.S. 2384, 2397 (2005).

28

1  context. *Id.* Therefore, neither *Sass* nor *McQuillion* demonstrate that, in parole cases, the some-
2  evidence standard is "clearly established" by the United States Supreme Court for purposes of
3  review under AEDPA.

4      The Supreme Court has reaffirmed that under AEDPA the federal courts must only apply
5  clearly established Supreme Court precedent. *Musladin*, 127 S. Ct. at 654 (holding that federal
6  habeas relief is only available under AEDPA if the state court's decision was contrary to or
7  involved an unreasonable application of an applicable United States Supreme Court holding).
8  Specifically, in *Musladin*, the court held that the federal courts could not import a state-action
9  standard regarding spectator conduct during a criminal trial to a private action because there was
10  no clearly established Supreme Court authority applying the state-action standard to a private
11  action. *Id.* In reaching this decision, the Court determined that for purposes of AEDPA, clearly
12  established federal law could not be based on Supreme Court dicta or persuasive circuit court
13  authority. *Id.*

14      Similarly, the Supreme Court recently determined that the Ninth Circuit had improperly
15  applied two prior Supreme Court cases regarding a petitioner's ineffective assistance of counsel
16  claim because the prior authority was factually distinguishable. *Schriro v. Landrigan*, __ U.S. __,
17  127 S. Ct. 1933, 1942-43 (2007). As a result, the Supreme Court indicated that because it had
18  never addressed a situation like the one raised in *Schriro*, the state court's decision was not an
19  objectively unreasonable application of clearly established Supreme Court precedent. *Id.*
20  Likewise, this Court should not apply the *Hill* standard regarding prison disciplinary proceedings
21  to a parole suitability determination.

22      The Ninth Circuit has also recently affirmed this principle in a number of cases. For
23  instance, in *Foote v. Del Papa*, __ F.3d __, 2007 WL 1892862 (9th Cir., July 3, 2007), the Ninth
24  Circuit affirmed the district court's denial of a petition alleging ineffective assistance of appellate
25  counsel based on an alleged conflict of interest because no Supreme Court case has held that
26  such an irreconcilable conflict violates the Sixth Amendment. *Id.* at *2-3. The court noted that
27  while it had previously found a basis for relief as to this type of claim, it now acknowledged that
28  federal habeas relief under AEDPA was improper because there was no applicable Supreme

Answer to Pet. for Writ of Habeas Corpus; Mem. of P. & A.    *Ross v. Curry*
                                                             C07-2560 WHA

1   Court holding. *Id.* Finally, in *Nguyen v. Garcia*, 477 F.3d 716 (9th Cir. 2007), the Ninth Circuit

2   upheld the state court's decision, finding that there was no clearly established law that the rights

3   of the accused addressed in *Wainwright v. Greenfield*, 474 U.S. 284 (1986)—regarding evidence

4   of mental competency in the guilt phase of a trial—applied during a preliminary mental

5   competency hearing given that the Supreme Court has not determined whether *Wainwright*

6   applies to competency hearings. *Id.* at 718, 727.

7        In summary, the Supreme Court authority describing the process due when there is a federal

8   liberty interest in parole simply requires that the inmate be given an opportunity to be heard and

9   be advised of the reasons he was not found suitable for parole. *Greenholtz,* 442 U.S. at 16.

10  Here, Petitioner does not contend that he failed to receive these protections. (*See generally* Pet.)

11  Because Petitioner received all the process due under the United States Supreme Court precedent

12  finding a federal liberty interest in discretionary parole release, the state court decision was not

13  contrary to or an unreasonable application of clearly established federal law as determined by the

14  United States Supreme Court. *See* 28 U.S.C. § 2254(d).

15  **B.   Even if the Some-Evidence Standard Applies, the State Court Decisions Are Still
         Not Contrary to or an Unreasonable Application of Federal Law, as Clearly**
16       **Established by the United States Supreme Court, nor Based on an Unreasonable
         Interpretation of the Facts.**

17

18       Under the some-evidence standard, a decision finding an inmate unsuitable for parole

19  cannot be "without support" or "arbitrary." *See Hill*, 472 U.S. at 457 (describing some-evidence

20  standard in context of a prison disciplinary hearing). The some-evidence standard is "minimally

21  stringent," and a decision must be upheld if there is any reliable evidence in the record that could

22  support the conclusion reached by the factfinder. *Powell v. Gomez*, 33 F.3d 39, 40 (9th Cir.

23  1994) (citing *Hill*, 472 U.S. at 455-56, and *Cato v. Rushen*, 824 F.2d 703, 705 (9th Cir. 1987)).[4]

24

25        4. Petitioner asserts the novel claim that a preponderance-of-evidence standard rather than

26  the some-evidence standard should be applied. (Pet. at 18-21.) But not only did the California
    Supreme Court resolve this issue in *Dannenberg* and *Rosenkrantz*, the Ninth Circuit also recently

27  reiterated its prior determination that the some-evidence standard is the appropriate standard. *Sass*,
    461 F.3d at 1128-29; *Irons v. Carey*, 479 F.3d 658, 662 (9th Cir. 2007) (Petitions for Rehearing

28  filed).

Answer to Pet. for Writ of Habeas Corpus; Mem. of P. & A.                              *Ross v. Curry*
                                                                                       C07-2560 WHA

13

1    Here, the state courts' decisions are not contrary to, nor an unreasonable application of,

2 Supreme Court law, nor are they based on an unreasonable interpretation of the facts, because the

3 state courts properly found that the grounds cited by the Board in support of its June 2006

4 decision denying Petitioner parole were supported by some evidence. (Ex. 7 [indicating that

5 Board had denied Petitioner parole "because of the commitment offense, the strength or lack

6 thereof of a parole plan and his lack of a GED"].) Specifically, the Board considered the motive

7 of Petitioner's murder offense as well as finding that the murder had been committed in a manner

8 that was "especially cruel and callous and clearly demonstrates an exceptionally callous disregard

9 for human suffering," in that after a fight during which Petitioner stabbed the victim

10 "approximately 24, 25 times," he left him bleeding on the floor "essentially to die." (Ex. 1 at 58-

11 60.) Further, the Board also found that Petitioner lacked a GED and needed to develop

12 alternative parole plans regarding his plans for residence. (Ex. 1 at 65-68, 71-72.) As with the

13 commitment offense, these findings were supported by some evidence from Petitioner's

14 testimony at the parole hearing and Life Prisoner Evaluation Reports. (Ex. 1 at 23-26, 29-32, 34,

15 36-38, 40-41; Ex. 3 at 6-7; Ex. 4 at 4.)

16    Petitioner argues in his petition that the Board could not properly consider his lack of a

17 GED or parole plans because these factors are not "grounds for a finding of unsuitability." (Pet.

18 at 6j.) But not only does Petitioner fail to provide any authority for his argument, it is contrary to

19 the Board's regulations. For instance, the general guidelines in the regulations provide that the

20 Boar may consider both whether the inmate "has made realistic plans for release or developed

21 marketable skills that can be put to use upon release" and whether "[i]nstitutional activities

22 indicate an enhanced ability to function within the law upon release." Cal. Code Regs. tit. 15, §

23 2402(d)(8)-(9). And even more significantly, the Board's regulations specifically require it to

24 consider "[a]ll relevant, reliable information available to the panel," including any "information

25 which bears on the prisoner's suitability for release." Further, even if one of these

26 circumstances—such as Petitioner's lack of a GED—would be insufficient in itself to "firmly

27

28

1    establish unsuitability for parole," the Board may validly consider such information as

2    "contribut[ing] to a pattern which results in a finding of unsuitability." *Id.* at § 2402(b). As a

3    result, Petitioner's conclusion that the Board only validly considered his crime (Pet. at 6j) is

4    erroneous.[5]

5        Further, in denying Petitioner parole the Board also considered and expressed concern that

6    Petitioner had exhibited a pattern of minimizing his conduct, not just as to the murder offense,

7    but also as to the circumstances of each of his disciplinary actions. (Ex. 1 at 64-65, 69.) The

8    Board's findings regarding Petitioner's murder offense and his conduct immediately following

9    the murder offense—in which he attempted to disguise his involvement, initially lied to the

10   police, and later minimized his culpability in discussing the crime at his parole hearing—are

11   supported by some evidence as set forth in Petitioner's testimony at the parole hearing, the

12   Probation Officer's Report, and the 2002 and 2006 Life Prisoner Evaluations. (Ex. 1 at 5-21, 56-

13   60; Ex. 3 at 1; Ex. 4 at 1-4; Ex. 5.) The Board's findings regarding Petitioner's minimization of

14   his disciplinary history are supported by the parole hearing transcript, in which Petitioner

15   discusses his disciplinary misconduct. (Ex. 1 at 21-23, 46.) Although not considered by the

16   superior court, this Court can still consider this evidence because under AEDPA, this Court is

17   only concerned with whether the superior court's decision, as opposed to its reasoning, is

18   contrary to or an unreasonable application of Supreme Court law. *Hernandez v. Small*, 282 F.3d

19   1132, 1140 (9th Cir. 2002) (determining in habeas proceedings that "the intricacies of the state

20   court's analysis need not concern us; what matters is whether the *decision* the court reached was

21   contrary to controlling federal law").

22       In addition to the factual circumstances of the murder offense, the state court's decision was

23   also reasonable given that Petitioner's murder offense satisfied the special circumstances

24

25       5. Based on his conclusion that the Board only validly considered his commitment offense,
     Petitioner cites *Dannenberg*, arguing that the Board was required to show that his crime was
26   "particularly egregious"—exceeding the minimum requirements for a conviction. (Pet. at 6r-s.) This
     standard, however, is not applicable given that rather than relying solely on the murder offense, as
27   Petitioner alleges, the Board also relied on his lack of adequate parole plans, lack of a GED, and
     minimization of his culpability both for the murder offense and his prison disciplinary history. (Ex.
28   1 at 64-72.) More importantly, there is no clearly established federal law requiring such an analysis.

1   enumerated in Penal Code section 190.2 for death penalty eligibility. Specifically, Petitioner's

2   offense involved a murder occurring during a burglary.[6] Cal. Penal Code § 190.2(a)(17)(G). As

3   a result, given that Petitioner's murder offense made him eligible for death penalty consideration,

4   his murder offense involved "particularly egregious acts beyond the minimum necessary to

5   sustain the conviction" for first-degree murder. *See In re Van Houten*, 116 Cal. App. 4th 339,

6   352 (2004). For this reason, the state court did not unreasonably conclude that the Board could

7   properly deny Petitioner parole based on the circumstances of his murder offense. Moreover,

8   even if the circumstances of Petitioner's crime did not exceed the minimum requirements of a

9   first-degree murder offense, the Board still reasonably considered the crime in the context of the

10  other grounds for denying parole. *See* Cal. Code Regs. tit. 15, § 2402(b) (stating that

11  "[c]ircumstances which taken alone may not firmly establish unsuitability for parole may

12  contribute to a pattern which results in a finding of unsuitability").

13      Finally, in assessing the state court's review of Petitioner's claims, not only should the

14  appropriate deference be afforded under AEDPA to the state court's review, but deference is also

15  due to the underlying Board decision. The Supreme Court has recognized the difficult and

16  sensitive task faced by the Board members in evaluating the advisability of parole release.

17  *Greenholtz*, 442 U.S. at 9-10. Thus, contrary to Petitioner's belief that he should be paroled

18  based on the evidence in support of parole presented at the hearing (Pet. at 6j-n), the Supreme

19  Court has stated that in parole release, there is no set of facts which, if shown, mandate a

20  decision favorable to the inmate. *Greenholtz*, 442 U.S. at 9-10. Instead, under the some-

21  evidence standard, the court's inquiry is limited solely to determining whether the state court

22  properly found that the Board's decision to deny parole is supported by any evidence in the

23  record, i.e., some evidence. *See Hill*, 472 U.S. at 455.

24      In summary, the state court properly found that the Board had sufficient evidence to deny

25  parole based on Petitioner's commitment offense, lack of a GED, and need to further develop his

26

27

28
    6. In addition to first-degree murder, Petitioner was also convicted of first-degree burglary
    in connection with entry into the victim's home. (Pet. at 2.)

1  parole plans. In addition, the state court's decision denying relief was also supported by the

2  Board's consideration of evidence showing that Petitioner continues to minimize his culpability

3  both as to the crime and as to his prison disciplinary history. Petitioner thus can neither

4  demonstrate that the state courts' decisions denying his federal habeas claims were contrary to or

5  an unreasonable application of clearly established Supreme Court law, nor that they were based

6  on an unreasonable determination of the facts. 28 U.S.C. § 2254(d); *Wilson,* 355 F.3d at 1154.

7  As a result, Petitioner's federal habeas corpus petition should be denied.

8  **C.    Petitioner Fails to Demonstrate that the Board's Decision Was Otherwise Unlawful.**

9        In addition to challenging whether the evidence demonstrated his suitability for parole,

10  Petitioner also alleges that the Board's decision was unlawful on several other grounds.

11  Petitioner's arguments, however, are without merit.

12        **1.    Petitioner Cannot Show that the Board Unlawfully Relied on the**
         **Circumstances of His Crime to Deny Him Parole at His Second Parole**
13        **Consideration Hearing.**

14        Petitioner cannot demonstrate a due process violations based on the Board's reliance, in

15  part, on the circumstances of his murder offense to deny him parole at his 2006 parole hearing

16  (*See* Pet. at 6n-r), which was only his second parole consideration hearing (Ex. 2).

17        California state law requires that the Board examine the commitment offense when

18  determining parole suitability. California Penal Code section 3401 states that the Board "shall

19  set a release date unless it determines that the gravity of the current convicted offense or offenses,

20  or the timing and gravity of current or past convicted offense or offenses, is such that

21  consideration of the public safety requires a more lengthy period of incarceration." In addition,

22  the Board's regulations require the Board to consider, among other criteria, the inmate's

23  commitment offense, including "behavior before, during, and after the crime" as well as "past

24  and present attitude toward the crime." Cal. Code Regs. tit. 15, § 2402(b). Indeed, although not

25  as issue in this case, the California Supreme Court held in *Dannenberg* that the Board may rely

26  *solely* on the circumstances of the commitment offense to deny parole. 34 Cal. 4th at 1094.

27        In disputing the Board's consideration of the circumstances of his first-degree murder

28  offense, Petitioner relies on several state and federal cases, including *Biggs v. Terhune*, 334 F.3d

Answer to Pet. for Writ of Habeas Corpus; Mem. of P. & A.                    *Ross v. Curry*
                                                                             C07-2560 WHA

17

910, 914 (9th Cir. 2003), where the Ninth Circuit *upheld* a Board decision denying parole while noting in dicta that "continued reliance in the future on an unchanging factor, the circumstance of the offense and conduct prior to imprisonment, . . . could result in a due process violation." *Id.* at 917. But not only is this statement dicta, the *Biggs* court did not definitively indicate that continued reliance on the commitment offense would violate due process, only that it possibly could. Moreover, in *Biggs* the court upheld the parole denial based solely on the crime even though the court praised Biggs for being "a model inmate" and found that the record was "replete with the gains Biggs has made," including a master's degree in business administration. *Id.* at 912.

In *Sass,* the Ninth Circuit clarified *Biggs*, determining that the *Biggs* dicta regarding the possibility of a future due process violation was insufficient to establish a basis for federal habeas relief because "[u]nder AEDPA it is not our function to speculate about how future parole hearings could proceed." *Sass*, 461 F.3d at 1129. As a result, the Ninth Circuit rejected in *Sass* the argument that the Board's reliance on the "immutable behavioral evidence" of the inmate's conviction violated due process. *Id.* Rather, the court determined that the Board "cannot be categorized as acting arbitrarily" by relying on the offense to deny parole and that the evidence regarding the gravity of Sass's convicted offense "constituted some evidence to support the Board's decision."[7] *Id.* And although the Ninth Circuit again recently revisited this issue in dicta once more in *Irons v. Carey*, 479 F.3d 658 (9th Cir. 2007) (Pets. for Rehrg. filed), it held there that despite "substantial" evidence of rehabilitation in that case, the Board acted properly within its discretion in continuing to rely on the circumstances of the inmate's offense to deny parole. *Id.* at 663-64. Thus, Petitioner cannot demonstrate that the Board is precluded from relying on the circumstances of his commitment offense in denying parole.

---

7. This Court has also recognized that the Board may properly rely on static factors to deny parole. In a recent decision, this Court noted that "Past criminal conduct is not some arbitrary factor like eye color that has nothing to do with present dangerousness. Recidivism concerns are genuine. California's parole scheme does not offend due process by allowing the [Board] to predict that an inmate presents a present danger based on a crime he committed many years ago." *Hill v. Kane*, 2006 WL 3020923 at *3 (Oct. 23, 2006) (N.D. Cal.) (citations omitted).

1    Furthermore, as in *Sass* and *Irons*, the Ninth Circuit's dicta discussing the Board's

2    continued reliance on the crime to deny parole is "without apparent foundation in any Supreme

3    Court holding" and therefore does not meet AEDPA's standard of being clearly established

4    federal law, as determined by the Supreme Court. *Cass v. Woodford*, 432 F. Supp. 2d 1061,

5    1065-67 (S.D. Cal. 2006). As a result, Petitioner cannot rely on such dicta for purposes of

6    obtaining federal habeas relief.

7    And contrary to Petitioner's allegations (Pet. at 6r), even if the Ninth Circuit dicta could be

8    applied, the Ninth Circuit did not indicate in this line of cases that reliance on the commitment

9    offense is appropriate only until after the minimum term is reached. (See Pet. at 6r.) To the

10   contrary, in *Irons*, the Ninth Circuit indicated that it was not deciding, nor had it previously

11   determined in *Biggs* or *Sass*, whether and at what point after the minimum term the Board's

12   reliance "solely on an inmate's commitment offense, regardless of the extent of his

13   rehabilitation" would violate due process. *Irons*, 479 F.3d at 665. Moreover, given that *Irons*

14   referred to cases where the parole denial after the minimum term would be based solely on the

15   commitment offense, the Ninth Circuit's reasoning is not applicable to this case given that the

16   Board relied on several criteria in denying Petitioner parole.

17   Finally, Petitioner cannot demonstrate that the Board has improperly continued to rely on

18   the circumstances of his crime to deny parole in that the June 2006 hearing represented only

19   Petitioner's second parole consideration hearing. (Ex. 2.) Thus, Petitioner cannot show that the

20   Board improperly considered his first-degree murder offense as part of the basis for its decision

21   to deny him parole. *See, e.g., Dannenberg*, 34 Cal. 4th at 1070 (upholding the Board's decision

22   denying parole primarily based on the circumstances of the crime even though the petitioner had

23   been denied parole on "several prior occasions"); *In re Honesto*, 130 Cal. App. 4th 81, 84-85

24   (2005) (upholding parole denial at third parole consideration hearing based in part on

25   circumstances of crime).

26   **2.    Petitioner's Erroneously Argues that He Is Entitled to Parole Based on the**
          **Language of California Penal Code section 3041(a) and the Board's Sentencing**
27        **Matrices.**

28   Petitioner contends that he has been punished for a greater offense that his first-degree

1   murder conviction based on his allegation that the Board is "normally" required to parole all

2   indeterminate life-term prisoners after they become eligible for parole under California Penal

3   Code section 3041, and that the Board is required to calculate a fixed parole release date under its

4   sentencing matrices even though it found Petitioner unsuitable for parole. (Pet. at 6t.)

5        As an initial matter, Petitioner's claims regarding the proper interpretation of California's

6   parole statute and regulations are solely state law clams, and thus not cognizable in federal

7   habeas corpus. *See, e.g., Rose v. Hodges*, 423 U.S. 19, 21 (1975); *Gutierrez v. Griggs*, 695 F.2d

8   1195, 1197-98 (9th Cir. 1983). Moreover, even if Petitioner is alleging that the state court

9   erroneously interpreted or applied the applicable California law when it denied his petition, a

10  federal court may not challenge a state court's interpretation or application of state law,

11  *Middleton v. Cupp*, 768 F.2d 1083, 1085 (9th Cir. 1985), or grant relief "on the basis of a

12  perceived error of state law." *Pulley v. Harris*, 465 U.S. 37, 41 (1984). Thus, the Petition should

13  be denied as to these claims.

14       Alternatively, to the extent these claims are cognizable, they are without merit. As to

15  Petitioner's construction of the language in Penal Code section 3041(a) indicating that parole

16  shall "normally be granted," the California Supreme Court has determined, in construing the

17  *entire* statute, that "the statutory language belies the notion of a *mandatory duty*" to parole any

18  prisoner, nor does it notably restrict the Board's discretion in determining parole suitability.

19  *Dannenberg*, 34 Cal. 4th at 1084-88 (emphasis in original). Rather, Petitioner is only entitled to

20  parole after having been found suitable for parole release. *Irons*, 479 F.3d at 662 (citing

21  *Dannenberg*, 34 Cal. 4th at 1078). Petitioner thus cannot show that he is entitled to parole based

22  solely on the language of Penal Code section 3041(a).

23       Further, as to the Board's regulatory sentencing matrices, California Penal Code section

24  3041 and the applicable regulations governing parole separate the suitability determination from

25  setting a release date, and make it clear that the determination of an appropriate release date

26  occurs only *after* deciding that an inmate is suitable for parole. Cal. Penal Code § 3041; Cal.

27  Code Regs. tit. 15, §§ 2402(a), § 2402(a); *Dannenberg*, 34 Cal. 4th at 1082-83. As a result, the

28  Board may lawfully deny Petitioner parole without comparing his offense to other inmates with

1   the same offense, "to [the Board's] base term matrices, or to the minimum statutory prison term

2   for that offense." *Dannenberg*, 34 Cal. 4th at 1098.  Accordingly, Petitioner's claim regarding

3   the Board's sentencing matrices is also without merit.

4       **3.    Petitioner's Claim that *Dannenberg* Violated the Ex Post Facto Clause by Imposing a New Legal Standard Allowing the Board to Consider Evidence**

5       **Exceeding the Inmate's Conviction Is Without Merit.**

6       Petitioner alleges that in holding that the Board could consider whether the inmate's crime

7   exceeded the minimum requirements for his conviction, the California Supreme Court in

8   *Dannenberg* has improperly allowed the Board to consider evidence in excess of that underlying

9   his conviction, thus violating the Constitution's Ex Post Facto Clause.  (Pet. at 6s-t.)  But

10  contrary to Petitioner's claim, [8] it was well established long before *Dannenberg* that the Board is

11  not limited by the nature of the conviction as to the evidence or factors it can consider, most

12  significantly because the Board is not required to support its decision with evidence that meets

13  the criminal beyond-a-reasonable-doubt standard.  *See Pedro*, 825 F.2d at 1399 (holding that the

14  full panoply of rights due a defendant in a criminal proceeding is not constitutionally mandated

15  in a parole proceeding because the setting of a parole term is not part of a criminal prosecution);

16  *Rosenkrantz*, 29 Cal. 4th at 678-79 (expressly holding that the Board may consider the facts

17  beyond the conviction even if the jury did not find such facts to be true beyond a reasonable

18  doubt).  Moreover, the Board did not find in this case that Petitioner's crime exceeded the

19  minimum requirements to sustain his conviction, but rather solely applied the facts of Petitioner's

20  first-degree murder offense to the Board's regulatory criteria.[9]  (Ex. 1 at 58-59.)  Accordingly,

21  Petitioner's ex post facto claim is without merit.

**CONCLUSION**

23      The state courts' decisions upholding the Board's June 2006 parole denial were not contrary

25      8.  Although Petitioner disputes this principle, he does not allege what evidence or factors
26  considered by the Board exceeded his first-degree murder conviction.

27      9.  And as previously indicated (*see supra* Arg. I.B. at 14 n.5), this standard also would not
28  apply to any judicial review of the Board's decision given that the Board denied parole on multiple grounds rather than based solely on the commitment offense.

Answer to Pet. for Writ of Habeas Corpus; Mem. of P. & A.                                   *Ross v. Curry*
                                                                                            C07-2560 WHA

1  to, or an unreasonable application of, Supreme Court authority, nor were the state court decisions

2  based on an unreasonable determination of the facts.  Petitioner does not contest that he had an

3  opportunity to be heard and that he received a written copy of the Board's decision.  That is all

4  the due process he is entitled to receive.  Further, even if the Court applies the some-evidence

5  standard, Petitioner cannot show that the state courts unreasonably concluded that the Board's

6  decision denying parole was supported by some evidence.  In addition, Petitioner's other claims

7  challenging the validity of the Board's decision are without merit.  Accordingly, Respondent

8  respectfully requests that the Petition be denied and the Order to Show Cause discharged.

9       Dated:  August 2, 2007

10                              Respectfully submitted,

11                              EDMUND G. BROWN JR.
                                Attorney General of the State of California

12                              DANE R. GILLETTE
                                Chief Assistant Attorney General

13
                                JULIE L. GARLAND
14                              Senior Assistant Attorney General

                                ANYA M. BINSACCA
15                              Supervising Deputy Attorney General

16

17

18

                                SCOTT C. MATHER
19                              Deputy Attorney General
                                Attorneys for Respondent

20

21
     20096330.wpd
22   SF2007200462

23

24

25

26

27

28

Answer to Pet. for Writ of Habeas Corpus; Mem. of P. & A.                    *Ross v. Curry*
                                                                              C07-2560 WHA

22

## DECLARATION OF SERVICE BY U.S. MAIL

Case Name:    **WAYNE STEDSON ROSS v. BEN CURRY, Warden**

No.:    **C07-2560 WHA**

I declare:

I am employed in the Office of the Attorney General, which is the office of a member of the California State Bar, at which member's direction this service is made. I am 18 years of age or older and not a party to this matter. I am familiar with the business practice at the Office of the Attorney General for collection and processing of correspondence for mailing with the United States Postal Service. In accordance with that practice, correspondence placed in the internal mail collection system at the Office of the Attorney General is deposited with the United States Postal Service that same day in the ordinary course of business.

On **August 3, 2007,** I served the attached

### ANSWER TO PETITION FOR WRIT OF HABEAS CORPUS; MEMORANDUM OF POINTS AND AUTHORITIES

by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid, in the internal mail collection system at the Office of the Attorney General at 455 Golden Gate Avenue, Suite 11000, San Francisco, CA 94102-7004, addressed as follows:

**Wayne Stedson Ross**
**D-59353**
**Correctional Training Facility**
**P.O. Box 686**
**Soledad, CA 93960-0686**
In Pro Per

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on **August 3, 2007**, at San Francisco, California.

| J. Tucay | J. Tucay |
|----------|----------|
| Declarant | Signature |

20099008.wpd