# EXHIBIT 4

LIFE PRISONER EVALUATION REPORT
INITIAL PAROLE CONSIDERATION HEARING
NOVEMBER 2002 CALENDAR

ROSS, WAYNE                                                                D59353

I. **COMMITMENT FACTORS:**

A. **Life Crime:** Murder 1st, PC 187, Ventura County case number CR22128. Sentence: 25 years to Life. MEPD: 12/1/03. Victim: Ernest Sanchez, age 73.

1. **Summary of Crime:** On 12/31/86, at approximately 0930 hrs., businessman Ray Tejada arrived at victim Ernest Sanchez' residence to check on tax documents that the victim had been preparing on his behalf. Upon arrival, Tejada noticed the front door open and unlocked and a bathroom window was broken. Tejada entered the residence and repeatedly called the victim's name to no avail. Tejada observed that the lights were on and saw a television set sitting on the kitchen floor. Tejada went through the house and saw that the bedroom was empty. He later entered the lounge/office area from where the victim normally conducted his tax accounting business. It was there that he discovered the 73-year-old victim lying on his side, fully clothed, in an apparently injured condition. Tejada immediately retreated from the house and went to the bank, cashed a check, then went home and called the police and advised them of his client's discovery. At approximately 1100 hr., Oxnard Police, fire, and emergency medical personnel arrived at the victim's residence and located him lying in a pool of blood. His vital signs were checked and he was determined to be dead. During the investigation, a set of identifiable fingerprints were lifted from the inside sill of the broken bathroom window which were later found to match those fingerprints belonging to Wayne Ross. Also found in the office/lounge area were a pair of scissors imbedded in the baseboard. The room itself had splatters blood and the furniture was in disarray as though there had been a struggle. There were shoe prints in the bloodstains on the kitchen tile flooring. The telephone was found with the receiver off the hook dangling onto the floor. Because Ross was a primary suspect in a previous December 16, 1986, theft of the deceased victim's wallet, Oxnard Police investigators contacted him at his residence and brought him to the Oxnard Police Department for questioning. Ross denied involvement in the murder and instead maintained that he had been with his brother Melvin Webster and friend Crawford McCauley the evening that the victim had

INMATE COPY

ROSS, WAYNE                    D59353                    CTF-Soledad                    NOV/2002

been murdered. Ross also indicated that the and the murder victim were good friends and that on occasion, because the victim was still sexually active, he would provide him with females. He also stated that the victim was in good shape and very strong; that they would box with each other. Police investigators interviewed McCauley and Webster who both confirmed that the three were together during the previous evening. While at Ross' residence, investigators checked all his tennis shoes in an attempt to match the shoe prints found on the victim's kitchen floor. Police investigators were left with the impression that Ross was a witness and that he was not a suspect. Later, investigators were notified that Ross' fingerprints matched those lifted off the windowsill. Ross was again brought to the police station and Mirandized. Ross waived his rights per Miranda and submitted to a polygraph test and a second interview. Ross subsequently confessed to inflicting blows on the victim with a pair of scissors in self-defense. He claimed that he did not intend to kill the victim and that when he left, he thought the victim was alive. On 12/31/86 at approximately 9:25 p.m., Ross was re-interviewed by Detectives Tatum and Garcia regarding the homicide. He claimed to have killed the victim in self-defense that the victim had initiated the attack by striking him several times in the face. He also claimed that the victim struck him with the stapler. He stated that the victim purported grabbed a pair of scissors off the desk and began stabbing at Ross. Ross claimed to have gotten the scissors away from the victim, then started hitting the victim back with the scissors, making contact with him three or four times. Ross told detectives that he had lied because he was afraid. He claimed that he dumped his bloody clothing near K-Mart, then later changed his story and stated that he dumped the clothes in the area of Channel Islands Boulevard and Bard Road, and that he had taken his shoes to McCauley's hotel room where he had tried to wash off the blood. He also indicated that they (McCauley and his brother) had gone to the area of Terrace Avenue and purchased cocaine but had not used any prior to the altercation.

At the conclusion of the interview, Ross was transported to St. John's Hospital where a blood sample was drawn. He was also examined for his injuries. It was noted that he had a number of small lacerations on the fingertips of his left hand. He was then placed under arrest for Murder, PC 187. On January 1, 1987, Dr. Ronald O'Halloran performed an autopsy on the victim. The victim had approximately eight wounds to the chest area; none punctured the victim's lungs/chest cavity. The victim's body also had approximately 26 to 28 puncture wounds to the face, neck, and head area. Many of the head wounds penetrated the scalp and appeared to have gouged the victim's skull. A majority of the wounds were concentrated on the victim's right cheek and temple area. No visible defensive wounds were found on the victim's hands. Cause of death was determined to be

ROSS, WAYNE             D59353              CTF-Soledad             NOV/2002

myocardioischemia due to blood loss from the multiple stab wounds; that the contributing factors were sclerotic heart disease and coronary thrombosis. Also Dr. O'Halloran noted that all the wounds had been inflicted while the victim was still alive, that the wounds caused bleeding but not death itself. (Source document: POR, pgs. 6-14).

2. **Prisoner's Version:** Ross was interviewed and made the following statement regarding the crime. He indicated that he and the victim were close, having met while working at Vitro Corporation. Upon being laid off, Ross began seeking employment but was unsuccessful. During this period of time, he periodically did the victim's yardwork. He stated that he began hanging out on the streets and being aimless. Ross stated that he and the victim had become drinking buddies and that on the night of the offense, had been drinking together. Because he had been able to get girls for sexual favors in the past for the victim, Ross claimed that that night the victim was demanding that he do this for him again. He made several phone calls and was unable to convince anyone to come over. It was at that time that Ross claims the victim called him the "n" word. He stated that the victim said to him, "Man, you got to come up with it, nigger." Ross stated that he began fighting him and that "all hell broke loose." Ross stated that he recalled having something in his hand and began hitting him. Ross stated that at one point the victim struck him with a telephone receiver. Ross stated that although he may have appeared not to have any remorse, he did have remorse; that in his heart he is remorseful. Ross seemed to have difficulty at times articulating his feelings but wanted this writer to know that he felt terrible for what he did. He also stated that when he left, he had no idea that the victim was going to die.

B. **Aggravating/Mitigating Circumstances:**

1. **Aggravating Factors:**

   a. Victim was particularly vulnerable due to his age (73 years old) and poor health (heart condition).

   b. Inmate had a position of trust with the victim as a longtime friend.

   c. Inmate had opportunity to cease but continued with the crime.

   d. Murder was senseless and served no purpose in completing the crime.

   e. Use of weapon (scissors).

ROSS, WAYNE                D59353                CTF-Soledad                NOV/2002

   **f.**    Nature of crime exhibited viciousness, cruelty, or callousness as evidenced by the 26 to 28 stab wounds suffered by the victim.

  **2.**    **Mitigating Factors:** Minimal arrest history.

## II. PRECONVICTION FACTORS:

 **A.**    **Juvenile Record:** None noted.

 **B.**    **Adult Convictions:** On 10/28/84, Ross was arrested by Oxnard Police for H & S 11550(B) Under the Influence of Controlled Substance. On 10/31/84, he was referred to drug diversion per PC 1000.

   On 9/30/86, he was charged with PC 166.4 Disobey Court Order/Process.

   On 1/1/87, he was arrested by Oxnard Police Department for PC 187 Murder, and PC 459 Burglary First Degree.

   On 6/18/87 he was sentenced to 25 years to Life for his Murder conviction.

   On 3/15/88, while incarcerated at Folsom State Prison, he was arrested for PC 4502 Prisoner in Possession of a Weapon. On 3/24/88, the District Attorney declined to file.

 **C.**    **Personal Factors:** Ross was born on 9/12/58 in Ventura, California, to Palmer Stedson Ross and Johnny Neal. He was the fifth of six children, two brothers and three sisters.

   He attended local schools, dropping out of Oxnard High School during his second semester of his senior year. He later enrolled in Oxnard College where he completed Bowling, Black Experience of Fine Arts, and Welding. He attended three semesters, then dropped out.

   According to the POR, the inmate indicated that he drank alcohol moderately and on a social basis. He admitted to using marijuana and rock cocaine on a recreational but not regular basis.

   Ross stated that prior to the commitment offense, he worked for a microscopic electronic assembly plant called Vitro Corporation. It was there that Ross became acquainted with the victim. He indicated that they became the best of friends. Ross stated that he began working at Vitro in late 1983 and was subsequently laid off in 1986. He began seeking employment but was unsuccessful. Because he had worked since high school, Ross felt very depressed about his unemployment

ROSS, WAYNE     D59353     CTF-Soledad     NOV/2002

status. He borrowed money from the victim on more than one occasion. They were friends prior to Ross' lay off and became closer after the lay off incident. Ross advised that he and the victim periodically got together and drank alcohol together. He stated that on occasion, he would "get" a girl to come over to the victim's residence to provide sexual favors. On the evening of the homicide, Ross stated that the victim was pressuring him for "a girl" and that he was unable to come through for the victim.

### III. POSTCONVICTION FACTORS:

A. **Special Accommodations/Disability:** None.

B. **Custody History:** Since Ross' Documentation Hearing in June 1999, he remained housed at CMC-East. On 8/18/99, he was transferred to CTF II after being referred to CSR for transfer review. He was housed at CTF Central Facility where he remains to date in the general population.

C. **Work, Education, Vocation, Therapy & Self-Help Activities:** Ross was assigned to PIA Shirt Factory per CDC 262 and per CDC 128G's dated 6/29/99 and 7/7/99. No work supervisor's reports were found in the Central File. He was assigned to F-Wing Porter at CTF Central Facility. He was unassigned on 8/12/00 A1A to A2B due to receiving a serious CDC 115. He has been unassigned since. While incarcerated at CMC East, he participated in Narcotics Anonymous on a regular basis per CDC 128B dated 3/4/99. There are no CDC 128B's indicating any further participation in self-help groups. There is a laudatory chrono dated 7/1/02 authored by D. Crowther, Academic Teacher (GED) for Ross' continued participation in the daily distribution and monitoring of student materials in the GED program. He is praised about his voluntary assistance in this program.

D. **Disciplinary History:** Ross received a serious CDC 115 for Participating in a Work Stoppage on 7/26/00 and on 10/24/01 for Mutual Combat without Serious Injury. Relative to the Work Stoppage CDC 115, Ross was given a direct order to assist with the feeding of F-Wing during a lock down. Ross refused to exit his cell. The Mutual Combat CDC 115 involved Ross and his cell partner Inmate Walker getting involved in a fistfight.

### IV. FUTURE PLANS:

A. **Residence:** In the event the inmate is given a release date, Ross plans to reside with either his sister June (and husband Jack) Underwood at 7734 Lamancha Way, Sacramento, CA 95823; phone number (916) 399-5782. He advised that

ROSS, WAYNE           D59353           CTF-Soledad           NOV/2002

       they own a personal business doing janitorial services and that he would be able to work for them. His other option is to reside with his sister Evelyn Allison at 10207 Weston Hill Drive, San Diego, CA; phone number (619) 578-8799.

  **B.**   **Employment:** Ross believes that he would be able to obtain employment as a shipping clerk or in machine shop trade, having completed Vocational Machine Shop trade.

**V.**   **USINS STATUS:** N/A

**VI.**   **SUMMARY:**

  **A.**   Considering the commitment offense, prior record and prison adjustment, this writer believes that the prisoner would pose an unpredictable degree of threat to the public if released at this time. Ross has had difficulties remaining disciplinary free. Although he has parole plans, he also needs to develop a stronger employment base.

  **B.**   Prior to release the prisoner could benefit from upgrading vocationally, becoming and remaining disciplinary free, and participating in self-help groups such as AA.

  **C.**   This Board Report is based upon a one and half-hour interview with the inmate, a thorough review of the Central File, and incidental contact with the inmate.

  **D.**   Ross was afforded an opportunity to examine his Central File on 8/23/02. He declined the Olson Review per CDC 128B dated 8/23/02.

  **E.**   No accommodation for the purposes of effective communication was required per the Armstrong Remedial Plan (ARP).

ROSS, WAYNE       D59353       CTF-Soledad       NOV/2002

_____
M.Y. Cross
Correctional Counselor I


_____
L. Gibbs
Correctional Counselor II(A)


_____
I. Guerra
Facility Captain


_____
D.S. Levorse
Classification and Parole Representative

BOARD OF PRISON TERMS
STATE OF CALIFORNIA

# LIFE PRISONER: POSTCONVICTION PROGRESS REPORT

- [ ] DOCUMENTATION HEARING
- [x] PAROLE CONSIDERATION HEARING
- [ ] PROGRESS HEARING

**INSTRUCTIONS**
TO CDC STAFF: DOCUMENT EACH 12-MONTH PERIOD FROM THE DATE THE LIFE TERM STARTS TO PRESENT
TO BPT STAFF: FOR EACH 12-MONTH INCREMENT APPLY THE GUIDELINES UNDER WHICH THE PAROLE DATE WAS ORIGINALLY ESTABLISHED, ie., 0-2 MONTHS FOR PBR AND 0-4 MONTHS FOR BPT. SEE BPT §§2290 - 2292, 2410 AND 2439.

| POSTCONVICTION CREDIT | | | REASONS |
|---|---|---|---|
| YEAR | BPT | PBR | |
| 3/99 to 6/00 | | | **PLACEMENT**: Remained housed at CMC-E in the general population. On 8/18/99 he was transferred to CTF II and housed at Central Facility. **CUSTODY**: Medium A custody is appropriate at both CMC-E and CTF Soledad. **CLASSIFICATION SCORE**: Classification score adjusted to 13 on 6/29/99 at Annual Review. Referred to CSR for TX review, RX CTF II/FSP II. **ACADEMIC**: None. **WORK**: Assigned to PIA Shirt Factory per CDC 262 and per CDC 128G's dated 6/29/99 and 7/7/99, no work supervisor reports were located iln the Central File. **VOCATION**: None. **GROUP ACTIVITIES**: Per CDC 128B chrono dated 3/4/99, Ross attended and was active member of Narcotics Anonymous. **PSYCH TREATMENT**: None noted. **PRISON BEHAVIOR**: Ross did not incur any CDC 115's this period or CDC 128A chronos. |

ROSS, WAYNE    D59353    CCTII(A) 4 M.Y. Cross    CTF    DATE 9/23/02

NOV/2002

BPT 1004 (REV 7/86)    Page _1_

BOARD OF PRISON TERMS  STATE OF CALIFORNIA

## CONTINUATION SHEET: LIFE PRISONER: POSTCONVICTION PROGRESS REPORT

| POSTCONVICTION CREDIT | | | REASONS |
|---|---|---|---|
| YEAR | BPT | PBR | |
| 6/00 to 6/01 | | | **PLACEMENT:** Remained housed at CTF Soledad Central Facility.<br>**CUSTODY:** Medium A custody remained appropriate.<br>**CLASSIFICATION SCORE:** Classification score was adjusted to 15 reflecting one disciplinary free period and one period of full time job assignment.<br>**ACADEMIC:** None noted.<br>**WORK:** Ross was assigned to F-Wing Porter and was unassigned on 8/2/00, A1A to A2B due to a serious CDC 115.<br>**VOCATION:** None noted.<br>**GROUP ACTIVITIES:** None noted.<br>**PSYCH TREATMENT:** None noted.<br>**PRISON BEHAVIOR:** Received a serious CDC 115 for Participating in Work Stoppage. He was found guilty of a Division F and assessed 30 days LOC. |

**ORDER:**
- ☐ BPT date advanced by _____ months.
- ☐ PBR date advanced by _____ months.
- ☐ BPT date affirmed without change.
- ☐ PBR date affirmed without change.

**SPECIAL CONDITIONS OF PAROLE:**
- ☐ Previously imposed conditions affirmed.
- ☐ Add or modify

☐ Schedule for Progress Hearing on appropriate institutional calendar

ROSS, WAYNE            D59353            CTF            NOV/2002

BOARD OF PRISON TERMS  STATE OF CALIFORNIA

BPT 1004 (REV 7/86)            Page _2_

**BOARD OF PRISON TERMS**                                                                                              **STATE OF CALIFORNIA**

## CONTINUATION SHEET: LIFE PRISONER: POSTCONVICTION PROGRESS REPORT

| POSTCONVICTION CREDIT | | | REASONS |
|---|---|---|---|
| YEAR | BPT | PBR | |
| 6/01 to 8/02 | | | **PLACEMENT:** Remained at CTF Central Facility in general population. **CUSTODY:** Medium A remained appropriate. **CLASSIFICATION SCORE:** Classification score adjusted to 15 at his Annual Review on 7/11/02-one period of no serious CDC 115. **ACADEMIC:** None noted. **WORK:** None noted. **VOCATION:** None noted. **GROUP ACTIVITIES:** None noted. **PSYCH TREATMENT:** Nonen noted. **PRISON BEHAVIOR:** Ross received another serious CDC 115 on 10/24/01 for Mutual Combat with Inmate Walker without Serious Injury. Ross was found guilty and assessed 61 days LOC. |

**ORDER:**
- ☐ BPT date advanced by _____ months.
- ☐ PBR date advanced by _____ months.
- ☐ BPT date affirmed without change.
- ☐ PBR date affirmed without change.

**SPECIAL CONDITIONS OF PAROLE:**
- ☐ Previously imposed conditions affirmed.
- ☐ Add or modify

☐ Schedule for Progress Hearing on appropriate institutional calendar

ROSS, WAYNE                D59353                    CTF                        NOV/2002

**BOARD OF PRISON TERMS**                                                                                              **STATE OF CALIFORNIA**

BPT 1004 (REV 7/86)                                Page _3_