# EXHIBIT 9

**SUPREME COURT COPY**

Wayne Ross
D-59353 ED-110-L
P.O. Box 689
Soledad, CA 93960-0689
Pro Per

SUPREME COURT
FILED
FEB 1 4 2007
Frederick K. Ohlrich Clerk
  DEPUTY
CALIFORNIA SUPREME COURT

RECEIVED
FEB 1 4 2007
CLERK SUPREME COURT

S150234

| | |
|---|---|
| Wayne Ross,<br><br>　　　　Petitioner,<br><br>v.<br><br>BEN CURRY, Warden (A), et al.,<br><br>　　　　Respondent. | Case No._____<br><br>PETITION FOR REVIEW<br><br>(Review of, California Courts of Appeal<br>Second Appellate District - Division 6<br>Case Number B196399, Denial, filed and<br>became final on February 6, 2007.) |

PETITION FOR REVIEW

　　Petitioner, Wayne Ross, ask this court to review the denial of the California Courts of Appeal, Second Appellate District, denying his application for Writ of Habeas Corpus against the Board of Parole Hearings, denying his application to be released on parole.  Case No. B196399, filed Feb. 6, 2007.

NECESSITY FOR REVIEW

　　Petitioner is a indeterminate term inmate, serving a 25 to life sentence for first degree murder.  He has been a model inmate for more than 20 continual years of incarceration.  His offense, being first degree murder does not contain elements beyond the minimum necessary to sustain a conviction, therefore his offense cannot support a finding he currently poses an unreasonable risk to society if released on parole.  This court has failed to set standards for first

degree murders release on parole, only second degree murder, thus review is necessary to set such standards. <u>Cunningham v. California</u>, 2007 WL 135687.

PETITIONER'S CONTENTIONS

GROUND ONE:

Decision petitioner is unsuitable for parole is not supported by some evidence in the "record" that petitioner currently poses an unreasonable risk to public safety if released on parole.

GROUND TWO:

Petitioner's due process rights under the 5th & 14th Amendment of the U.S. Constitution were violated at his subsequent parole consideration hearing, held June 9, 2006, by the Board's continued use of unchanging factors.

GROUND THREE:

The Board failed to consider CDCR's assessment that petitioner's commitment offense was "NOT UNUSUALLY VIOLENT" by taking an opposite and inconsistent position that the offense was "PARTICULARLY EGREGIOUS" in relation to "Public Safety" such an act violates petitioner's right to due process during the hearing under both STATE and FEDERAL LAW.

GROUND FOUR:

Petitioner requests a modification to the restitution fine of $10,000.00 dollars the Court imposed during sentencing after petitioner pled guilty to all charges, saving the state and county the expense of a costly trial.

///

///

///

**GROUND ONE:**

Decision petitioner is unsuitable for parole is not support by some evidence in the "record" that petitioner currently poses an unreasonable risk to public safety if released on parole.

Specifically petitioner challenges the reasons cited to deny parole, ((in the decision by the Board of Parole Hearings (BOARD)) do not provide evidence to support a finding that petitioner's release on parole would pose a current risk to "public safety" if released on parole, during his subsequent parole consideration hearing held June 9, 2006 (transcripts of that hearing (Bound Separately) as Exhibit A). NOTE: All exhibits bound and submitted separate.

Petitioner accepted full responsibility for his offense shortly after arrest, he pled guilty to all charges, saving the state and county expense of a trial and further pain and suffer to the victims family. Petitioner was received by the California Department of Rehabilitation on June 18, 1987, with an established minimum eligible parole date of January 21, 2003. Petitioner was arrested on December 31, 1986, for his offense, petitioner pled guilty on May 5, 1987, counsel stipulated that the murder is first degree, petitioner accepted a sentence of 25 years (Ex B). On June 10, 1987, petitioner was sentenced to prison (Ex C).

The Board cited the following reasons in concluding petitioner was not suitable for parole and would pose an unreasonable risk of danger to society or a threat to public safety if released from prison: 1. Commitment offense, 2. Strengthen up parole plans, 3. Lack of GED. (Ex A pgs. 58, 72). While its true the commitment offense can postpone a finding of suitability, lack of a GED or parole plans the Board claims do not meet their expectations, are not grounds for a finding of unsuitability. Thus, petitioner will only be challenging the finding of unsuitability for parole because of his commitment offense.

3

The factor statutorily required to be considered, and the overarching consideration, is "Public Safety", In re Scott (2005) 133 Cal.App.4th 573; In re WEN LEE 2006 DJDAR 13961; In re Elkins 2006 DJDAR 14489. And the California Supreme Court equated the term "suitable" with "safety" In re Dannenberg, (2005) 34 Cal.4th 1061, 1091.

Numerous courts have found the predictive value of offenses declines over time Scott, supra, WEN LEE, supra, Elkins, supra, and California Law does not allow the Board to convert a life with parole sentence into a life without parole sentence, Bair v. Folsom State Prison, 2005 WL 3081634 (E.D.Cal. 2005), Rosenkrantz v. Marshall, 2006 WL 2327085 (C.D. Cal. 2006).

The Board failed to consider all of petitioner's rehabilitation record, petitioner has made numerous gains over the past 20 years and has maintain these gains as evidenced by his non-violent prison record, even lowering his prison security level, all of which is discussed infra.

The California Department of Corrections and Rehabilitation (CDCR) has concluded petitioner poses a low security risk, always being mindful of public safety concerns by finding the following:

1) Petitioner's offense was "not unusually violent" by being classified a level II inmate (Ex E) and Ground Three.
2) Petition has a non-violent prison record, (Ex A, E, F).
3) Petitioner is now classified a low "public safety" risk by being housed at Correctional Training Facility II - East Dormitory - designed for non-violent, programming, working individuals, such inmate's are considered "low risk" and "non-violent" as testified to in the case Johnson v. California, 321 F.3d 791,795.

The Board's failure to consider petitioner "risk to public safety" based on his prison programming and prison housing, and CDCR's assessment of petitioner as stated above, has resulted in a violation of due process.

4

The Board's sole reliance on the gravity of the offense to justify denial of parole can be "initially" justified as fulfilling the requirements set forth by state law. (Biggs v. Terhune (9th Cir. 2003) 334 F.3d 910, 916.) however, over time, should petitioner continue to demonstrate exemplary behavior and evidence of rehabilitation, denying a parole date simply because of the nature of the commitment offense raises serious questions involving his liberty interest in parole. (Id. at p. 917.). Thus, petitioner's commitment offense, assuming the offense met the Dannenberg, supra, test, supported denial at petitioner's initial hearing, the crime "no longer" supports denial in face of the Board's finding that petitioner's rehabilitation would support parole.

### PETITIONER'S REHABILITATION ACHIEVEMENTS

Petitioner has availed himself to numerous self-help, education, vocation courses, of most important are:

Petitioner accepted full responsibility for his offense at an early stage of the proceedings by pleading guilty, petitioner's Vocation, Education, Self-Help and Work consists of: Vocational Auto Machine Shop, ABE-III, Porter, Vocational Yard Crew, Prison Industry Authority Wood Furniture Factory, with above average work grades, good work habits, good attitude, completed Federal Emergency Management Agency Institute, Independent Correspondence Study Course, received 27 certificates of the Emergency Management Institute Professional Development Series, which is a commitment to standards of Excellence in Emergency Management, GED Tutorial Program, How to Become a Father, and Not Get Angry, Family Effectiveness Training and Harmony in the Home Self Help Program, Course in the Cause, Prevention, Treatment and Management of Sexually Transmitted Infections, Hepatitis, HIV and AIDS, and Tuberculosis, Narcotics Anonymous, Anger Management Program, Petitioner also reads numerous self-help books and submits written reports (Exhibit A, E, F).

### PETITIONER'S PRIOR CRIMINAL HISTORY

Minor traffic matters and a child support issue. (Exhibit E).

## PSYCHIATRIC EVALUATION

Starting with the report written 1990, petitioner Diagnosis: Adult antisocial behavior, in 1996 petitioner was found to have poor judgment and insight, in 2002 petitioner showed improved with insight and judgment, prognosis for community living is guarded, risk to violence in the community was considered to be low-to-moderate, petitioner's latest psych report written May, 2006 found petitioner to have good judgment, insight and self-awareness, no mental disorder, no personality disorder, low risk level, no risk factors in this case, prognosis for successful adjustment in the community is good.

Over the years, find by staff psychiatrists, petitioner has changed for the good, petitioner has gained good insight, good judgment, remorse, and is currently considered a low risk to public safety if released on parole (Ex. F).

## PETITIONER'S SOCIAL RELATIONSHIPS

Petitioner has personal and social relationships with Rosa Ross, Carolyn Middlebrook, Evelyn Allison, Larry Foster, April Underwood, Deliaha Martin, Jack Underwood, Laura Carbajal, June Underwood, Shadina Edmond, (Exhibit G).

## PETITIONER'S PAROLE PLANS

Petitioner has gained marketable skills while in prison, as discussed supra, and petitioner has been offered housing and a job when released (Ex G).

## SUBSTANCE ABUSE

Petitioner admits his prior substance abuse problem, and attends substance abuse programs, and intends to continue upon release, which could be made a condition of parole, evidence shows petitioner's substance abuse problems have been in remission for 20 years.

CURRENT LAW HOLDS: Reliance on conduct prior to imprisonment to justify denial of parole can be initially justified as fulfilling the requirements set forth by state law. But, where inmate over time continues to demonstrate exemplary behavior and evidence of rehabilitation, denying him a parole date

4(b)

simply because of the nature of prior conduct would raise serious questions involving his liberty in parole; In re Smith, 114 Cal.App.4th 372; Biggs, v. Terhune, 334 F.3d 916; Irons v. Warden, 358 F.Supp.2d. 947 - fn.2.

DUE PROCESS IS VIOLATED by the continued reliance on unchanging factors when the Board of Parole Hearings repeatedly ignore evidence of the inmate's exemplary post-incarceration development and rehabilitation, Biggs v. Terhune, 334 F.3d 910 (9th Cir. 2003); Irons v. Warden of Calif. State Prison, 358 F.Supp.2d 936, 947 (E.D.Cal.2005). Exactly the problem in the instant case, the board has relied on unchanging factors, petitioner's commitment offense, to deny parole; Numerous Courts have found: [T]he continued reliance on unchanging factors, to deny parole, violates due process; Clay v. Kane, No. 04-8663-VAP(AJW) (C.D.Cal. December 2, 2005) (similar); Saif'ullah v. Carey, No. 02-2664-MCE(DAD), 2005 WL 1555389 (E.D.Cal. June 28, 2005) (similar); Yellen v. Butler, No. S-01-2398-MCE, (E.D.Cal. March 31, 2004) (similar); Masoner v. State, No. 03-1261-ER, 2004 WL 1080177 (E.D.Cal. Jan 23, 2004) (similar).

There is "no evidence" in petitioners case of any unsuitability factor other than the now expired predictive value of the commitment offense, and all suitability factors have been met or exceeded.

On October 17, 2006, five (5) months after the California Supreme Court granted review, vacated their summary denial, ordered a show cause directing the department of corrections and rehabilitation as to why some evidence supports a finding the indeterminate sentenced (ISL) inmate posed a current risk to public safety, the California Courts of Appeal, Second Appellate District, issued their published opinion, In re WEN LEE, 2006 DJDAR 13961.

In 1989, Wen Lee pleaded guilty to second degree murder and attempted premeditated murder, resulting from Johnny Soong's failure or refusal to pay Wen Lee for the restaurant Lee sold to Soong. After numerous attempts to collect payments from Soong, Lee armed himself with a gun and a box of

4(c)

ammunition, Lee had decided that, if Soong refused to pay, he would kill Soong and then himself. Lee entered the restaurant and asked Soong for his money. Soong shock his head and told Lee he did not have time to talk, Lee then pulled out his gun and fired five times before the gun jammed. Soong was hit twice, Soong survived the shooting, one of the bullets that missed Soong, hit Soong's wife, Tuai Li-Chun in the head, killing her.

The court found the gravity of this murder and attempted murder of two victims, did not exceed the minimum elements necessary to make this offense particularly egregious, nor especially heinous, atrocious, or cruel. Lee was sentenced to 17 years to life for second degree murder of Mrs. Soong and life with the possibility of parole for the attempted murder of Mr. Soong. The court also said had Lee been convicted of first degree murder this finding would strengthen. The Court also found, when all suitability factors have been met by an ISL inmate (California Code of Regulations title 15 section 2402), and the only reason for denial for parole is based on the unsuitability factors of the crime, past crimes, or motive (factors that will never change) or the recent taking of responsibility, the record must contain some evidence of other factors which indicate this ISL inmate currently poses an unreasonable risk to public safety if released on parole from prison confinement.

Next the Lee court held, the test is not whether some evidence supports the reasons cited for denying parole, but whether some evidence indicates a parolee's release unreasonably endangers public safety. (Cal. Code of Regs. tit 15. § 2402, subd. (a) [parole denied if prisoner "will pose an unreasonable risk of danger to society if released from prison"], see e.g. In re Scott (2005) 133 Cal.App.4th 573, 595 ["The commitment offense can negate suitability [for parole] only if circumstances of the crime...rationally indicate that the offender will present an unreasonable public safety risk if released from prison"]; WEN LEE, supra pg 13963. Some evidence of the existence of a

particular factor does not necessarily equate to some evidence the parolee's release unreasonably endangers public safety. The reasons for denial must be viewed within the context of the other factors which must be consider to see if some evidence shows the ISL inmate poses an unreasonable risk to public safety (Ibid).

An ISL inmate may be denied parole if the Board finds evidence his crimes were committed in an especially heinous, atrocious or cruel manner, Cal. Code Regs. tit 15 § 2402, Subd. (c)(1). The test, however, is not, all killings are especially atrocious when one human kills another, all killings measured by social norms meet that test, (see Scott, supra pg 891), rather the test is whether among murders the one committed by the prisoner was particularly heinous, atrocious or cruel WEN LEE pg 13963-13964.

Besides an ISL inmate's offenses that are considered especially atrocious, heinous or callous, that excess to deny parole has limits, the Lee court found crimes have little, if any predictive value for future criminality, simply from the passage of time, 5 to 10 years was found to have some value of predicting future criminality, yet when 16 years pass, as in Lee's case, crimes committed that many years ago lose their usefulness in foreseeing the likelihood of future offenses (Id. p. 13964). And the First Appellate District court found, "We have also noted, as has our Supreme Court, strong legal and scientific support that "predictions of future dangerousness are exceedingly unreliable," even where the passage of time is not a factor and the assessment is made by an expert. In re Elkins, 2006 DJDAR 14489, Elkins entered a room where Ecklund was sleeping, intending to rob him of money and drugs. During the robbery, Eclund woke up and attacked Elkins with a knife. Elkins beat him over the head with a baseball bat, ending his life. Elkins put the body in his car trunk and drove to a remote area near Trudkee, California, where he dumped the body. Elkins robbed Ecklund' storage area and a girlfriend's house before leaving the state.

All murders, represent the basest form of human behavior. California Laws, however, provide for mechanisms by which even these offenders, in limited circumstances, are entitled to be paroled. The judiciary has an obligation to execute those laws. When the record demonstrates that an indeterminate term inmate no longer poses an unreasonable risk to public safety if released from prison, it serves no purpose to remand the matter back to the Board or Governor to reconsider their decisions (WEN LEE, supra, pg. 13966).

Petitioner having been convicted for his offense over 20 years ago, meets or exceeds all suitability factors, there is no evidence contained in petitioner's record, that petitioner would currently pose an unreasonable risk to public safety if released on parole, good cause as to why this Petition for review should be granted and to order his release on parole.

**GROUND TWO:**

Petitioner's due process rights under the 5th & 14th Amendment of the U.S. Constitution were violated at his subsequent parole consideration hearing, held June 9, 2006, (Ex A) by the Board's continued use of unchanging factors.

The Board's decision to deny parole was based solely on the commitment offense (Ex A) a factor petitioner can never change.

The mandatory language in California Penal Code (PC) 3041, creates a legally binding protected liberty interest in parole (Sass v. California Board of Prison Terms, 2006 DJDAR 11931) imposing a obligation to grant parole when certain conditions have been met, McQuillon v. Duncan, 306 F.3d. 901-2; Biggs v. Terhume, 334 F.3d. 914; Irons v. Warden, 358 F.Supp.2d 936. The Board found petitioner has met or exceeded all conditions of rehabilitation espoused by the CDCR (Ex A). The Biggs court warned denying parole at subsequent parole consideration hearings based solely on unchanging factors, runs contrary to the rehabilitation goals espoused by the prison system and denials in face of exemplary behavior, violates petitioner's liberty interest in parole. These

findings are clearly supported by the United States Supreme Court holding: "The behavior record of an inmate during confinement is critical in determining the degree the inmate is prepared to adjust to parole release" <u>Greenholtz v. Inmates of Nebraska</u>, 442 U.S. 15. In <u>Irons</u>, at 947, the judge said: "More important to the undersigned in assessing any due process violation is the fact that continued reliance on unchanging circumstances transforms an offense for which California Law provides eligibility for parole into a de facto life imprisonment without parole".

Neither California State Law, nor United States Supreme Court Law (<u>Blakely v. Washington</u>, 2004 DJDAR 7581; <u>Stogner v. California</u>, 2003 DJDAR 6989) allow the Board to convert a possible for parole sentence into a without possible parole sentence, the Board's denial of parole at petitioner's subsequent parole hearing based solely on unchanging factors supports such a finding and is clear reason why this petition for writ of habeas corpus should be granted.

**GROUND THREE:**

The Board failed to consider CDCR's assessment that petitioner's commitment offense was "Not Unusually Violent" by taking an opposite and inconsistent position that the offense was "Particularly Egregious" in relation to "Public Safety" such an act violates petitioner's right to due process during the hearing under both STATE and FEDERAL LAW.

The CDCR's classification panel's duty in assessing petitioner's risk to public safety, is the same as the Board's. CDCR must determine if the gravity of petitioner's offense was Unusually Violent, the Board must determine if the gravity of petitioner's offense was Particularly Egregious, if they both make the same finding, no error, no foul.

However, in petitioner's case, the CDCR found the gravity of petitioner's offense to be NOT Unusually Violent, while the Board found the gravity of the offense to be particularly egregious. One of the Departments has to be wrong.

The CDCR made their finding a number of years prior to the Board's finding, and the Board has never objected to CDCR's finding. While CDCR follows the California Code of Regulations (CCR) 3375 (b) ["Public Safety" be considered], 3376 (c)(2)(A) [re-assess each year] and 3375.2 (a)(7) [cannot house a "LIFE" term inmate in a level II facility, if that inmate's offense was "Unusually Violent", the Board follows CCR 2402 et seq. to determine if the inmates offense was "Especially Heinous, Atrocious or Cruel.

CDCR's decision has to be supported by "some evidence" In re Wilson, 202 Cal.App.3d. 661, 666-667; Superintendent v. Hill, 472 U.S. 445.

Administrative proceedings have been found to be Quasi-Judicial, Cazajkowski v. City of Chicago, ILL., 810 F.Supp. 1428. The Board has been found to be an arm of the CDCR, In re Dannenberg, 23 Cal.Rptr.3d. 440.

When a governing body takes inconsistent positions which has an adverse impact on a judicial process, the effected party can invoke the doctrine of judicial estoppel, Yniquez v. State of Ariz., 939 F.2d 727; Rissetto v. Plumbers and Steamfitters Local 343, 94 F.3d 597; Cal-Almond, Inc. v. Department of Agriculture, 67 F.3d 874, cert denied 519 US 819; Data General Corp. v. Jonhson, 78 F.3d 1556; Kennedy v. Applause, Inc., 90 F.3d 1477; US v. Garcia, 37 F.3d 1359, cert. denied 514 US 1067; Morris v. State of Cal., 966 F.2d 448 cert. denied Cal. v. Morris, 506 US 831.

The CDCR took a certain position regarding the gravity of petitioner's offense, the Board took an opposite position, thus Double Jeopardy also attaches and estoppel applies, Ashe v. Swenson, 397 US 435. Petitioner has a right to be judge fairly, Hampton v. US, 425 US 484. Ex post facto is violate by the California Supreme Courts finding that California Penal Code 3041 (b) allows the Board to find a second degree murder to be first degree murder (In re Dannenberg, 23 Cal.Rptr.3d 417, fn. 16. Such action is prohibited under, Stogner, supra.

It makes little sense, for CDCR to classify petitioners as a level II inmate (Ex E) house him at Correctional Training Facility - East Dormitory, as discussed in ground one, housing reserved for non-violent inmates, only to have the Board find the opposite, and deny parole by now claiming that petitioner's offense was so egregious he should be in a level IV high risk prison.

Therefore: Petitioner's Habeas should be granted.

### GROUND FOUR:

Petitioner request a modification to the restitution fine of $10,000.00 dollars the Court imposed during sentencing after petitioner pled guilty to all charges, saving the state and county the expense of a costly trial.

Petitioner entered into a plea agreement shortly after arrest (Ex B), saved the state and county the expense of a costly trial and pain and suffering the victims family would have endured had there been a trial.

The Court found petitioner did not have the financial ability to reimburse County of Venture/pay for: Court appointed counsel (who negotiated the plea agreement), pre-sentence investigation, or any other cost related to the case.

California Penal Code 1202.4 (b)(2) states in part: In setting restitution fine, multiply $200 x the number of years in prison, and subsection (c) of 1202.4 states in part: Inability to pay may be considered when increasing the fine in excess of $200 dollars.

Petitioner arrested 12/31/1986, sentenced to 25 years minus credits had a minimum eligible parole date of 1/21/2003, total number of years 17 x $200.00 per year equals a suggested restitution fine of $3,400.00 dollars which should be considered the maximum fine to be imposed, yet the court should also look to petitioner's inability to pay, a finding already made.

Therefore: Petitioner asks this court to reduce his fine to the minimum of $200.00 dollars due to his inability to pay, or up the maximum amount of $3,400.00 dollars, or whatever reasonable amount the court may chose.

I declare that prior to, at the time of trial and now more than 20 years later I am without the funds with which to pay such a high restitution amount.

I declare under the penalty of perjury all the above true and correct.

## CONCLUSION

THEREFORE: Petitioner asks, for the foregoing reasons, for this petition for review be granted.

Dated:        February 12, 2007

Respectfully Submitted,

*Wayne A. Ross*

Wayne Ross   Pro Per

5

**PROOF OF SERVICE BY MAIL**
**BY PERSON IN STATE CUSTODY**
(C.C.P. §§ 1013(A), 2015.5)

I, _____Wayne Ross_____, declare:

I am over 18 years of age and I am party to this action. I am a resident of CORRECTIONAL TRAINING FACILITY prison, in the County of Monterrey, State of California. My prison address is:

Wayne Ross, CDCR #: D-59353
CORRECTIONAL TRAINING FACILITY
P.O. BOX 689, CELL #: ED-110-L
SOLEDAD, CA 93960-0689.

On _____February 12, 2007_____, I served the attached:
PETITION FOR REVIEW

on the parties herein by placing true and correct copies thereof, enclosed in a sealed envelope (verified by prison staff), with postage thereon fully paid, in the United States Mail in a deposit box so provided at the above-named institution in which I am presently confined. The envelope was addressed as follows:

CALIFORNIA SUPREME COURT
350 McAllister St.
San Francisco, CA 94102-7303

CALIFORNIA COURTS OF APPEAL
Second Appellate District
200 E. Santa Clara St.
Ventura, CA 93001

Superior Court of California
County of Ventura
P.O. Box 6489
Ventura, CA 93006-6489

Attorney General of California
P.O. Box 944255
Sacramento, CA 94244-2550

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed on February 12, 2007.

_Wayne A. Ross_
Wayne Ross
Declarant

6

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION 6

February 6, 2007

In re Wayne Ross
on Habeas Corpus

B196399
Ventura County No. CR22128

THE COURT:

The petition for writ of Habeas Corpus is denied.