IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WAYNE STEDSON ROSS,<br><br>    Petitioner,<br><br>  v.<br><br>BEN CURRY, Warden,<br><br>    Respondent. | No. C 07-2560 WHA (PR)<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS** |

This is a habeas corpus case filed by a state prisoner pursuant to 28 U.S.C. 2254. The petition is directed to denial of parole.

The court ordered respondent to show cause why the writ should not be granted. Respondent has filed an answer and a memorandum of points and authorities in support of it, and has lodged exhibits with the court. Petitioner has responded with a traverse. For the reasons set forth below, the petition is **DENIED**.

## DISCUSSION

**A.   STANDARD OF REVIEW**

A district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable

determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). The first prong applies both to questions of law and to mixed questions of law and fact, *Williams (Terry) v. Taylor*, 529 U.S. 362, 407-09 (2000), while the second prong applies to decisions based on factual determinations, *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

A state court decision is "contrary to" Supreme Court authority, that is, falls under the first clause of § 2254(d)(1), only if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams (Terry)*, 529 U.S. at 412-13. A state court decision is an "unreasonable application of" Supreme Court authority, falls under the second clause of § 2254(d)(1), if it correctly identifies the governing legal principle from the Supreme Court's decisions but "unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. The federal court on habeas review may not issue the writ "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. Rather, the application must be "objectively unreasonable" to support granting the writ. *See id.* at 409.

"Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary." *Miller-El*, 537 U.S. at 340. This presumption is not altered by the fact that the finding was made by a state court of appeals, rather than by a state trial court. *Sumner v. Mata*, 449 U.S. 539, 546-47 (1981); *Bragg v. Galaza*, 242 F.3d 1082, 1087 (9th Cir.), *amended*, 253 F.3d 1150 (9th Cir. 2001). A petitioner must present clear and convincing evidence to overcome § 2254(e)(1)'s presumption of correctness; conclusory assertions will not do. *Id.*

Under 28 U.S.C. § 2254(d)(2), a state court decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El*, 537 U.S. at 340; *see also Torres v. Prunty*, 223 F.3d 1103, 1107 (9th Cir. 2000).

When there is no reasoned opinion from the highest state court to consider the petitioner's claims, the court looks to the last reasoned opinion. *See Ylst v. Nunnemaker*, 501 U.S. 797, 801-06 (1991); *Shackleford v. Hubbard*, 234 F.3d 1072, 1079, n. 2 (9th Cir.2000).

**B.   ISSUES PRESENTED**

Petitioner pled guilty to a charge of first degree murder and first degree burglary in 1987. He received a sentence of twenty-five years to life in prison. Petitioner challenges denial of parole at his second parole hearing, which was on June 9, 2006. He contends he has exhausted his claims by way of state habeas petitions.

In addition to denying petitioner's claims, respondent asserts that California prisoners have no liberty interest in parole and that if they do, the only due process protections available are a right to be heard and a right to be informed of the basis for the denial – that is, respondent contends there is no due process right to have the result supported by sufficient evidence. Because these contentions go to whether petitioner has any due process rights at all in connection with parole, and if he does, what those rights are, they will addressed first.

**1.   RESPONDENT'S CONTENTIONS**

The Fourteenth Amendment provides that no state may "deprive any person of life, liberty, or property, without due process of law." U.S. Const., amend. XIV, § 1.

**a.   LIBERTY INTEREST**

Respondent contends that California prisoners have no liberty interest in parole. Respondent is incorrect that *Sandin v. Conner*, 515 U.S. 472 (1995), applies to parole decisions, *see Biggs v. Terhune*, 334 F.3d 910, 914 (9th Cir. 2003) (*Sandin* "does not affect the creation of liberty interests in parole under *Greenholtz* and *Allen*."), and, applying the correct analysis, the California parole statute does create a liberty interest protected by due process, *see McQuillion v. Duncan*, 306 F.3d 895, 902 (9th Cir. 2002) ("California's parole scheme gives rise to a cognizable liberty interest in release on parole.").

**b.   DUE-PROCESS PROTECTIONS**

Respondent contends that even if California prisoners do have a liberty interest in parole, the due process protections to which they are entitled by clearly-established Supreme

3

Court authority are limited to notice, an opportunity to be heard, and a statement of reasons for denial. That is, he contends there is no due process right to have the decision supported by "some evidence." This position, however, has been rejected by the Ninth Circuit, which has held that the Supreme Court has clearly established that a parole board's decision deprives a prisoner of due process if the board's decision is not supported by "some evidence in the record", or is "otherwise arbitrary." *Irons v. Carey*, 479 F.3d 658, 662 (9th Cir. 2007) (applying "some evidence" standard used for disciplinary hearings as outlined in *Superintendent v. Hill*, 472 U.S. 445-455 (1985)); *McQuillion*, 306 F.3d at 904 (same). The evidence underlying the Board's decision must also have "some indicia of reliability." *McQuillion*, 306 F.3d at 904; *Biggs*, 334 F.3d at 915. The some evidence standard identified in *Hill* is clearly established federal law in the parole context for purposes of § 2254(d). *See Sass*, 461 F.3d at 1128-1129.

### 2. PETITIONER'S CLAIMS

#### a. "Some Evidence" Claim

Petitioner contends that the Board's order denying parole was not supported by "some evidence" and thus violated his due process rights.

Ascertaining whether the some evidence standard is met "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Hill*, 472 U.S. at 455; *Sass*, 461 F.3d at 1128. The some evidence standard is minimal, and assures that "the record is not so devoid of evidence that the findings of the disciplinary board were without support or otherwise arbitrary." *Sass*, 461 F.3d at 1129 (quoting *Hill*, 472 U.S. at 457).

It is now established under California law that the task of the Board of Parole Hearings and the governor is to determine whether the prisoner would be a danger to society if he or she were paroled. *See In. re Lawrence*, 44 Cal. 4th 1181 (2008). The constitutional "some evidence" requirement therefore is that there be some evidence that the prisoner would be such a danger, not that there be some evidence of one or more of the factors that the regulations list as factors to be considered in deciding whether to grant parole. *Id.* at 1205-06.

4

Petitioner killed a "friend" by stabbing him repeatedly with a pair of scissors (Exh. 1 at 8-11). The victim had eight puncture wounds in his chest area and twenty-six to twenty-eight in his face, neck and head (*id.* at 11). He bled to death (*id.* at 12). Petitioner's version of the crime was that when petitioner was unable to obtain a woman for the victim, as he had several times before, the victim attacked him and called him "the N word" (*id.* at 13). Nevertheless, petitioner thought the victim was just "horsing around" until the victim swung at him a couple of time with the scissors (*ibid.*). Petitioner "took" the scissors and "started ... punching at him and stuff" (*ibid.*). "This incident just unfolded, you know, just went worse. Everything went haywire" (*id.* at 14). The victim was seventy-four (*id.* at 6) and petitioner was twenty-eight (*id.* at 15).

At the time of the hearing petitioner had served nineteen years of a twenty-five year to life sentence for first-degree murder. Although that is a substantial amount of time, it is clear from the autopsy description of the wounds and from the fact that the victim bled to death that this was a particularly brutal crime, such that it still had some evidentiary value even nineteen years after it occurred. And petitioner both gave an unbelievable version of the crime – he seems to be characterizing it as horseplay – and attempted to deflect responsibility by acting as if it were something that "just unfolded," nothing to do with him. That he did so constituted evidence tied to petitioner's attitude at the time of the hearings – that is, not old evidence like the circumstances of the offense itself – which supported the denial of parole. In light of these considerations, the Board's conclusion that petitioner was to some extent trying to minimize the crime is correct (*id.* at 65).

These two pieces of evidence – the nature of the crime and petitioner's attempt to minimize it at the hearing – are in themselves sufficient to support the denial. But the denial also was supported by petitioner's failure to get a GED, despite having been told to do so in his one previous parole hearing (Exh. 40-41), and his failure to have a backup plan for where he was going to live if paroled (Exh. 29-32, 34, 35-38).

There was more than "some evidence" to support the Board's denial of parole. The state courts' rejections of this claim were not contrary to, or an unreasonable application of, clearly-

5

established Supreme Court authority.

  **b.  "*Biggs* Claim"**

  In a line of relatively recent cases the Ninth Circuit has discussed the constitutionality of denying parole when the only basis for denial is the circumstances of the offense. *See Hayward v. Marshall*, 512 F.3d 536, (9th cir. 2008); *Irons v. Carey*, 505 F.3d 846, 852-54 (9th Cir. 2007); *Sass v. California Bd. of Prison Terms*, 461 F.3d 1123, 1129 (9th Cir. 2006); *Biggs v. Terhune*, 334 F.3d 910, 915-17 (9th Cir. 2003).

  In *Biggs* the court said that it might violate due process if the Board were to continue to deny parole to a prisoner because of the facts of his or her offense and in the face of evidence of rehabilitation. 334 F.3d at 916-17. No legal rationale for this statement was provided, and it was unclear whether the court was suggesting that the continued denial of parole would be a new sort of due process violation or whether it was simply expressing the thought that with the passage of time the nature of the offense could cease to be "some evidence" that the prisoner would be a danger if paroled.[1] This ambiguity was helpfully cleared up in *Irons*, where the court clearly treated a "some evidence" claim as different from a "*Biggs* claim." *Irons*, 505 F.3d at 853-54. It appears, putting together the brief discussions in *Biggs* and *Irons*, that the court meant that at some point denial of parole based on long-ago and unchangeable factors, when overwhelmed with positive evidence of rehabilitation, would be fundamentally unfair and violate due process.

  As the dissenters from denial of rehearing en banc in *Irons* point out, in the Ninth Circuit what otherwise might be dictum is controlling authority if the issue was presented and decided, even if not strictly "necessary" to the decision. *Irons v. Carey*, 506 F.3d 951, — (9th Cir. Nov. 6, 2007) (dissent from denial of rehearing en banc) (citing and discussing *Barapind v. Enomoto*, 400 F.3d 744, 751 n. 8 (9th Cir.2005)). Depending on whether the discussion of

---

[1] The Supreme Court has clearly established that a parole board's decision deprives a prisoner of due process if the board's decision is not supported by "some evidence in the record," or is "otherwise arbitrary." *Sass v. California Bd. of Prison Terms*, 461 F.3d 1123, 1129 (9th Cir. 2006) (adopting "some evidence" standard for disciplinary hearings outlined in *Superintendent v. Hill*, 472 U.S. 445, 454-55 (1985).

6

dictum in the dissent from denial of rehearing en banc in *Irons* is correct, it thus may be that the Ninth Circuit has recognized that due process right, which for convenience will be referred to in this opinion as a "*Biggs* claim." Here, petitioner's second issue is a "*Biggs* claim," in that he contends that simply using the circumstances of his offense as grounds for denial for the second time violates due process, separate from his "some evidence" claim, which is issue one, discussed above.

Petitioner has failed to establish the predicate for his *Biggs* claim. For one thing, a second denial based on the circumstances of the crime does not amount to the repeated denials which the *Biggs* court suggested might violate due process. For another, petitioner's parole was not denied solely because of the circumstances of his offense, but also because of his unbelievable version of the crime professed at the hearing, his attempt to minimize his culpability at the hearing, his failure to get a GED, and the inadequacy of his parole plans. And finally, assuming for purposes of this discussion that *Biggs* and *Irons* recognized an abstract due process right not to have parole repeatedly denied on the basis of the facts of one's crime and in the face of extensive evidence of rehabilitation, and also assuming arguendo that the right was violated in petitioner's case, petitioner still cannot obtain relief on this theory, because as there is no clearly-established United States Supreme Court authority recognizing a "*Biggs* claim." The state courts' rulings therefore could not be contrary to, or an unreasonable application of, clearly-established Supreme Court authority.

### c. "Particularly Egregious"

Petitioner contends that a regulation of the California Department of Corrections and Rehabilitation ("CDCR") prohibits housing life-term prisoners at a Level I or Level II prison if their crime "involved multiple murders, unusual violence or execution-type murders or received high notoriety." Cal. Code Regs. tit. 15, § 3375.2(a)(7). He argues that because he is housed at a Level II prison, the Board's conclusion that his crime was particularly egregious conflicts with the determination of the CDCR. Whether or not that is true, there is no constitutional right involved. This claim is without merit.

///

1   ///

2             **d.**    **Ex Post Facto Claim**

3   Petitioner contends that the Board, in finding facts regarding the crime such as to deny
4   him parole, violated his rights under the Ex Post Facto Clause of the Constitution. He suggests
5   that it would be an ex post facto violation for a parole board to punish a prisoner convicted of
6   second-degree murder as if he or she had been convicted of first-degree murder. In this case,
7   however, petitioner *was* convicted of first-degree murder, so of course it was proper for him to
8   be punished for that crime. This claim is without merit.

9             **e.**    *Cunningham* **Claim**

10  Petitioner contends that his Sixth Amendment right to be sentenced based only on facts
11  tried to a jury and found by it to be true beyond a reasonable doubt was violated when the
12  Board allegedly made findings of fact and based its determination of the length of his
13  confinement upon those findings. He relies upon the relatively recent Supreme Court case of
14  *Cunningham v. California*.

15  "[U]nder the Sixth Amendment, any fact that exposes a defendant to a greater potential
16  sentence [than the statutory maximum] must be found by a jury, not a judge, and established
17  beyond a reasonable doubt, not merely by a preponderance of the evidence." *Cunningham v.*
18  *California*, 127 S. Ct. 856, 863-64 (2007). The relevant statutory maximum "'is not the
19  maximum sentence a judge may impose after finding additional facts, but the maximum he may
20  impose *without* any additional findings." *Id.* at 860 (quoting *Blakely v. Washington*, 542 U.S.
21  296 303-04 (2004)). As a result, the California sentencing system in which the sentencing
22  judge finds facts if deciding to sentence a defendant to a term other than the middle term is
23  unconstitutional. *Id.* at 871. *Cunningham* did not announce a new rule of criminal procedure
24  and, therefore, applies retroactively to federal habeas cases. *Butler v. Curry*, 528 F.3d 624, 634,
25  639 (9th Cir.2008).

26  That the line of cases running from *Apprendi v. New Jersey*, 530 U.S. 466, 488-90
27  (2000), through *Blakely* to *Cunningham* does not apply to the parole decision at issue here is
28  evidenced by the fact that an indeterminate sentencing scheme is one of the proposed solutions

to the jury trial problems caused by determinate sentencing schemes the Court has invalidated. *See, e.g., Blakely*, 542 U.S. at 305 (citing with approval *Williams v. New York*, 337 U.S. 241 (1986) (judge's consultation of facts outside the trial record to decide whether to sentence defendant to death did not violate the jury trial right because the indeterminate sentencing scheme allowed the judge to sentence the defendant to death or imprisonment)); *see also id.* at 332 (Breyer, J., dissenting) (noting that one of the alternatives to Guidelines-type sentencing scheme is indeterminate sentencing, such as California's former system).  In *Blakely*, the Court explained that indeterminate sentencing that gives a judge greater judicial power to set the sentence does not infringe on the province of the jury: "It increases judicial discretion, to be sure, but not at the expense of the jury's traditional function of finding the facts essential to the lawful imposition of the penalty.  Of course, indeterminate schemes involve judicial factfinding, in that a judge (like a parole board) may implicitly rule on those facts he deems important to the exercise of his sentencing discretion.  But the facts do not pertain to whether the defendant has a legal *right* to a lesser sentence–and that makes all the difference insofar as judicial impingement upon the traditional role of the jury is concerned." *Blakely*, 542 U.S. at 308-09.

For the reasons set out by the Supreme Court in the discussion above, this order concludes that petitioner's Sixth Amendment rights were not violated, and that it was not contrary to, or an unreasonable application of, clearly-established Supreme Court authority for the state courts to fail to apply the *Apprendi/Blakely /Cunningham* line of cases here.

## CONCLUSION

The petition for a writ of habeas corpus is **DENIED**.  The clerk shall close the file.

**IT IS SO ORDERED.**

Dated: October    15   , 2008.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

G:\PRO-SE\WHA\HC.07\ROSS2560.RUL.wpd

9